Filed 9/29/15

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| WILLIAM R. DANSER, | C071090 |
| Plaintiff and Appellant, | (Super. Ct. No. 34-2011-80000858-CU-WM-GDS) |
| v. | |
| CALIFORNIA PUBLIC EMPLOYEES' RETIREMENT SYSTEM et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Timothy M. Frawley, Judge.  Affirmed.

Law Offices of John Michael Jensen and John Michael Jensen for Plaintiff and Appellant.

Christopher C. Phillips for Defendants and Respondents.


During William Danser's service as a superior court judge, a jury convicted him in Santa Clara County Superior Court of conspiring to pervert or obstruct justice.  The trial court suspended imposition of sentence and placed Danser on probation for three years. The Court of Appeal affirmed the judgment and the California Supreme Court denied

1

review. Months later, the trial court reduced the felony charge to a misdemeanor, terminated probation, and granted Danser's petition to dismiss the criminal charges against him.

After the conviction but before sentencing, Danser retired from judicial office. The California Public Employees' Retirement System (CalPERS) subsequently determined that Danser was convicted of a felony offense in the course and scope of his judicial duties and that the conviction became final when the California Supreme Court denied review. Accordingly, CalPERS concluded that under the terms of Danser's pension plan -- the Judges' Retirement System II (JRS II) -- he is subject to the benefit forfeiture provision of Government Code section 75526.[1] CalPERS refunded Danser's retirement contributions and determined that he is precluded from receiving any retirement benefits from JRS II.

Danser challenged the CalPERS forfeiture determination in the Sacramento County Superior Court, filing a petition for writ of administrative mandamus (Code Civ. Proc., § 1094.5), writ of mandate (Code Civ. Proc., § 1085), and other extraordinary relief and damages. The trial court denied the writ petition and entered judgment for CalPERS.

Danser now claims (1) the CalPERS forfeiture action was time-barred; (2) CalPERS lacked jurisdiction to determine whether forfeiture occurred in this case; and (3) Danser is not subject to forfeiture of his retirement benefits because there was no final conviction punishable as a felony.

We conclude (1) Danser's contention that the CalPERS action is time-barred is forfeited because he did not support it with legal analysis and it was not raised in the administrative hearing; (2) his contention that CalPERS lacked jurisdiction is without

---

[1] Undesignated statutory references are to the Government Code.

merit because CalPERS acted within its authority to interpret applicable retirement law; and (3) section 75526 is concerned with whether Danser was found guilty of a felony offense and whether that finding of guilt is final; here, the finding of guilt was final when the Court of Appeal affirmed the judgment and the California Supreme Court denied review. We will affirm the judgment.

BACKGROUND

We present the undisputed facts by quoting directly from the trial court's statement of decision:

"[Danser] is a former judge of the Santa Clara County Superior Court. Based on his position, he participated in [JRS II]. CalPERS administers JRS II. Under section 75520 of JRS II, a judge accrues 'monetary credits' each month during judicial service. Under section 75521, a judge who retires with more than five years of service, but who is not eligible for a service retirement, is entitled to be paid his accrued 'monetary credits.'

"In September, 2003, a Criminal Grand Jury charged [Danser] by indictment with one felony count of conspiracy to pervert and obstruct justice under Penal Code section 182(a)(5). The Grand Jury also charged [Danser] with six misdemeanor counts of obstruction of justice, one misdemeanor count of attempted obstruction of justice, and one misdemeanor count of violating [] section 8920. The facts leading to the indictment were that, over a period of about two years, [Danser] conspired with a Los Gatos police officer to dismiss traffic tickets for friends and people associated with professional sports teams, and otherwise grant preferential treatment in the disposition of cases.

"[Danser] went to trial before a jury on all charged counts in April, 2004. On or about April 30, 2004, the jury convicted [Danser] on all nine counts.

"[Danser] retired as a judge on July 19, 2004. At the date of his retirement, [Danser] was credited with approximately 9 years and 2 months of judicial service.

3

He was not eligible for a service retirement. As of June 30, 2004, the 'monetary credits' attributed to [Danser]'s account, plus member contributions, totaled $248,696.09.

"On July 26, 2004, after his retirement notification, [Danser] appeared for sentencing in his criminal case. Imposition of sentence was suspended and [Danser] was placed on formal probation for three years upon various terms and conditions. [Danser] appealed the judgment. (See *People v. Danser* (2006) 2006 Cal.App. Unpub. LEXIS 1768.)

"Approximately one month after his retirement, in August, 2004, CalPERS informed [Danser] that, due to his criminal conviction, [Danser] forfeited any retirement benefits he would otherwise be due under the system, including the amount of any monetary credits in excess of his member contributions (plus interest). On this basis, on November 24, 2004, CalPERS issued a lump sum payment to [Danser] in the amount of $112,745.28, representing the return of his member contributions plus interest. (As of November 24, 2004, the balance of the remaining monetary credits formerly attributable to [Danser]'s account in JRS II was $135,950.78.)

"On February 27, 2006, the First District Court of Appeal affirmed [Danser]'s criminal convictions. Thereafter, [Danser] filed a petition for review by the California Supreme Court. The Supreme Court denied the petition for review [on] May 17, 2006.

"On August 11, 2006, the Santa Clara County Superior Court granted [Danser]'s request for early termination of probation, and reduced his felony conviction to a misdemeanor pursuant to Penal Code section 17, subdivision (b).

"On October 11, 2006, the Santa Clara County Superior Court granted [Danser]'s Petition for Expungement pursuant to Penal Code section 1203.4.

"After the Santa Clara County Superior Court reduced his conviction from a felony to a misdemeanor, [Danser] contacted CalPERS and asked for a return of the monetary credits previously attributed to his account. Between 2007 and 2009, CalPERS exchanged communications with [Danser] and inquired into his request.

4

"On or about July 3, 2009, CalPERS formally denied [Danser]'s request and advised him of his appeal rights.

"On July 30, 2009, [Danser] served CalPERS with [an] appeal of the denial of his request for the return of his monetary credits. CalPERS then initiated the appeal process and an evidentiary hearing was held before an [administrative law judge]. On February 7, 2011, the [administrative law judge] issued a proposed decision denying the appeal. CalPERS adopted the proposed decision as its Decision on April 19, 2011."

Danser filed a petition for writ of administrative mandamus (Code Civ. Proc., § 1094.5), writ of mandate (Code Civ. Proc., § 1085), and other extraordinary relief and damages. The trial court denied the writ petition and entered judgment for CalPERS.

STANDARD OF REVIEW

Traditional mandate lies to challenge an agency's failure to perform an act required by law. (Code Civ. Proc., § 1085.) Administrative mandate applies to challenge the results of an administrative hearing. (Code Civ. Proc., § 1094.5.) There are differences in the standards of review, but where the facts are not disputed, the distinctions are immaterial because we exercise independent judgment to address a pure legal question. (*Conlan v. Bonta* (2002) 102 Cal.App.4th 745, 763-764.) Danser does not challenge the accuracy of the trial court's recitation of facts and the parties agree that this court must independently construe the statute and its application to the facts.

DISCUSSION

I

Danser contends the CalPERS forfeiture action was time-barred by the one-year statute of limitation set forth in Code of Civil Procedure section 340. He claims the action was initiated by CalPERS on June 16, 2010, when CalPERS filed a statement of issues.

Danser asserts his contention in a single sentence without further argument. He does not explain why the filing of the CalPERS statement of issues initiated a "forfeiture

5

action." As Danser notes in his appellant's opening brief, there were many events that preceded the statement of issues, such as the CalPERS notice in 2004, Danser's requests for the return of credits in 2006 through 2008, the CalPERS denial in 2009, and Danser's filing of his administrative appeal on July 30, 2009.

Danser's contention is forfeited because he did not support it with legal analysis, and, in addition, because it was not raised in the administrative hearing. (Cal. Rules of Court, rule 8.204(a)(1)(B); *Opdyk v. California Horse Racing Bd.* (1995) 34 Cal.App.4th 1826, 1830-1831, fn. 4; *Southern Cal. Underground Contractors, Inc. v. City of San Diego* (2003) 108 Cal.App.4th 533, 549.)

## II

Danser next contends CalPERS lacked jurisdiction to determine whether forfeiture occurred in this case. He claims CalPERS has no jurisdiction to interpret the Penal Code or other criminal laws and procedures. Danser's contention lacks merit.

CalPERS is charged with administering JRS II (§ 75505, subd. (a)), and CalPERS is responsible for determining the right of a public pension system member to receive benefits. (*Metropolitan Water Dist. v. Superior Court* (2004) 32 Cal.4th 491, 503-504.) CalPERS acted within its authority in interpreting the retirement law to determine whether Danser was subject to the forfeiture provision of section 75526.

## III

Danser further contends he is not subject to the forfeiture of his retirement benefits because there was no final conviction punishable as a felony.

We begin our analysis with the applicable statute. Section 75526 provides:

"A judge who pleads guilty or no contest or is found guilty of a crime committed while holding judicial office that is punishable as a felony under California or federal law and which either involves moral turpitude under that law or was committed in the course and scope of performing the judge's duties, and the conviction becomes final shall not

6

receive any benefits from the system, except that the amount of his or her contributions to the system shall be paid to him or her by the system."

Focusing on the words "punishable as a felony" and "the conviction becomes final," Danser claims the forfeiture statute does not apply to him because the trial court suspended imposition of sentence and subsequently reduced the felony charge to a misdemeanor, terminated probation, and granted Danser's petition to dismiss the criminal charges against him. We will address each aspect of his argument in turn.

A

Danser argues there was no final conviction because the trial court suspended imposition of sentence. He quotes from *People v. Howard* (1997) 16 Cal.4th 1081, in which the California Supreme Court explained that when a trial court suspends imposition of sentence there is no judgment pending against the probationer; the probation order is a final judgment only for the limited purpose of taking an appeal. (*Id.* at p. 1087.)

The distinction asserted by Danser is correct, but his argument misses the point of the forfeiture statute. The words "the conviction becomes final" in section 75526 must be understood in connection with the words at the beginning of the sentence, which reference a judge who pleads guilty or no contest or is found guilty. Section 75526 is concerned with whether Danser was found guilty of an offense punishable as a felony and whether that finding of guilt is final. The statute is not concerned with the actual punishment meted out by the courts. Thus, in this context, although the imposition of Danser's sentence was suspended, the end of the appeal process -- the California Supreme Court's decision to deny review -- rendered final the jury's finding that Danser was guilty of an offense punishable as a felony. (See Pen. Code, § 1237; *Padilla v. State Personnel Bd.* (1992) 8 Cal.App.4th 1136, 1144-1145; *In re Phillips* (1941) 17 Cal.2d 55, 60.)

7

A similar approach can be found in the statutes pertaining to attorney discipline. Those statutes delay disbarment until the end of the appeal process (Bus. & Prof. Code, § 6102), but once the appeals are done the attorney discipline may proceed "irrespective of any subsequent order under Section 1203.4 of the Penal Code or similar statutory provision" and irrespective of whether imposition of sentence was suspended. (Bus. & Prof. Code, § 6102, subd. (c).)

Danser notes that in the more recent Pension Reform Act of 2013, the Legislature used explicit language not found in section 75526. The Pension Reform Act of 2013 provides in relevant part that forfeited pension benefits "shall remain forfeited notwithstanding any reduction in sentence or expungement of the conviction following the date of the [public employee]'s conviction." (§§ 7522.72, subd. (c)(1), 7522.74, subd. (c)(1).) Although such express language is not contained in section 75526, that fact, by itself, does not prevent us from interpreting the statutory scheme in a consistent manner where the language of the statute in question supports such an interpretation, as it does here.

Danser's contention lacks merit.

B

Danser next argues there was no felony conviction because the trial court reduced the felony to a misdemeanor pursuant to Penal Code section 17, subdivision (b).

The jury found Danser guilty of violating Penal Code section 182, subdivision (a). Penal Code section 182 is a wobbler: at the court's discretion depending on the facts, a violation of Penal Code section 182 can be punished as either a felony or a misdemeanor. (*People v. Proctor* (1993) 18 Cal.App.4th 1055, 1061.) Pursuant to Penal Code section 17, the trial court may reduce a felony wobbler to a misdemeanor either at the time probation is granted or at a later time, such as at the conclusion of probation like in this case. (*People v. Park* (2013) 56 Cal.4th 782, 791-793 (*Park*).)

8

Danser claims the *Park* case is factually similar and "essentially decides the issues in this case." We disagree. The *Park* case involved a defendant who, in a prior case, had pleaded guilty to felony assault with a deadly weapon. (*Park, supra,* 56 Cal.4th at p. 787.) The trial court in that prior case suspended imposition of sentence and placed the defendant on probation, but later reduced the felony wobbler to a misdemeanor pursuant to Penal Code section 17, subdivision (b)(3), and dismissed it pursuant to Penal Code section 1203.4, subdivision (a)(1). (*Park, supra,* 56 Cal.4th at p. 787.) In a subsequent case in which a jury found the defendant guilty of new crimes, the defendant admitted a prior serious felony conviction (the prior felony wobbler) but informed the trial court that the wobbler had been reduced to a misdemeanor. (*Park, supra,* 56 Cal.4th at p. 788.) The trial court nonetheless imposed a 5-year sentence enhancement pursuant to Penal Code section 667, subdivision (a). (*Park, supra,* 56 Cal.4th at p. 788.) The California Supreme Court reversed the imposition of the enhancement, holding that the reduction of the wobbler to a misdemeanor meant there was no prior serious felony within the meaning of Penal Code section 667, subdivision (a). (*Park, supra,* 56 Cal.4th at p. 787.)

In *Park*, the Supreme Court held there can be no prior serious felony sentencing enhancement if there is no longer a prior serious felony. But this case is different. As we have explained, section 75526 is not concerned with the actual punishment a judge has received or will receive. It is only concerned with whether the judge was found guilty of an offense "punishable" as a felony, and whether that finding of guilt is final. Here, the wobbler was clearly punishable as a felony even if Danser was not ultimately punished for a felony. (*Rusheen v. Drews* (2002) 99 Cal.App.4th 279, 285 [reducing a crime to a misdemeanor has no impact on the civil consequences of being convicted of a crime "punishable as a felony"]; *Gebremicael v. California Com. on Teacher Credentialing* (2004) 118 Cal.App.4th 1477, 1488 [distinguishing *Rusheen* because the relevant statute applied to persons "convicted of a felony" rather than crimes punishable as a felony].)

9

Conspiracy to obstruct justice is punishable as a felony and the civil consequences for Danser were triggered when a jury found him guilty of that crime, the Court of Appeal affirmed the judgment and the California Supreme Court denied review.

C

In addition, Danser argues that after the trial court dismissed the charges pursuant to Penal Code section 1203.4, there was no conviction at all.

A defendant whose probation has been terminated early has the right to have the charges against him dismissed as a form of legislatively authorized recognition of exemplary conduct during probation. (*People v. Lewis* (2006) 146 Cal.App.4th 294, 297.) The effect of dismissal is that the individual shall thereafter be released, with certain exceptions, from penalties resulting from the offense. (Pen. Code, § 1203.4.)

Citing *Stephens v. Toomey* (1959) 51 Cal.2d 864, a case involving the reinstatement of voting privileges, Danser construes Penal Code section 1203.4 as a means to retroactively erase the effects of a conviction. He describes the probation process as a way to rehabilitate and reinstate someone to his or her former status in society "before judgment is imposed and the conviction becomes final," arguing that the trial court's interpretation of the impact of the Penal Code section 1203.4 dismissal on his pension forfeiture "nullifies the intent and application of the rehabilitation process."

Although the relief provided by Penal Code section 1203.4 is sometimes referred to as "expungement," the statutory release from penalties and disabilities does not literally expunge the conviction and it does not render the conviction a legal nullity. (*People v. Holman* (2013) 214 Cal.App.4th 1438, 1463.) Danser seeks to compare his circumstances to disqualification from public office -- see *Helena Rubenstein Internat. v. Younger* (1977) 71 Cal.App.3d 406, 421, and *Boyll v. State Personnel Board* (1963) 146 Cal.App.3d 1070, 1074-1076 -- but the release pursuant to Penal Code section 1203.4 does not apply to provisions designed to protect the public. (*Holman, supra,* 214 Cal.App.4th at p. 1464; *People v. Frawley* (2000) 82 Cal.App.4th 784, 791.)

10

Penal Code section 1203.4 "was never intended to obliterate the fact that defendant has been 'finally adjudged guilty of a crime.' " (*Adams v. County of Sacramento* (1991) 235 Cal.App.3d 872, 877, quoting *In re Phillips* (1941) 17 Cal.2d 55, 61.) "It merely frees the convicted felon from certain 'penalties and disabilities' of a criminal or like nature." (*Id.* at pp. 877-878, quoting *Copeland v. Dept. of Alcoholic Bev. Control* (1966) 241 Cal.App.2d 186,188.)

Section 75526 is designed to protect the public by requiring civil consequences under circumstances such as those presented in this case. The dismissal of the case in October 2006 did not erase the fact that a jury found Danser guilty of a crime punishable as a felony, and it did not alter the civil consequences flowing from the jury's verdict, consequences that attached many months before the dismissal when the Court of Appeal affirmed the judgment and the California Supreme Court denied review.

DISPOSITION

The order denying the petition for writ of mandate is affirmed.


                 MAURO
                 Mauro, J.


We concur:


      BLEASE
Blease, Acting P. J.


      DUARTE
Duarte, J.