Filed 7/16/18

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| TOD HIPSHER,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>LOS ANGELES COUNTY EMPLOYEES RETIREMENT ASSOCIATION et al.,<br><br>    Defendants and Respondents,<br><br>COUNTY OF LOS ANGELES,<br><br>    Real Party in Interest and Appellant. | B276486<br><br>(Los Angeles County Super. Ct. No. BS153372)<br><br>ORDER MODIFYING OPINION<br><br>(NO CHANGE IN JUDGMENT) |

THE COURT:*

    It is ordered that the opinion filed on June 19, 2018, be modified as follows:

    On the last line of the caption page and the first two lines of page two, counsel for the County of Los Angeles is deleted and

replaced with "Liebert Cassidy Whitmore, Steven M. Berliner, Joung H. Yim and Christopher S. Frederick for Real Party in Interest and Appellant, County of Los Angeles"; and

On page 4, "the County" in the last sentence of the second full paragraph is deleted and replaced with "LACERA." There is no change in the judgment. (Cal. Rules of Court, rule 8.264(c)(2).)

_____

\*EPSTEIN, P.J.  WILLHITE, J.  MANELLA, J.

Filed 6/19/18

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| TOD HIPSHER,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>LOS ANGELES COUNTY EMPLOYEES RETIREMENT ASSOCIATION et al.,<br><br>    Defendants and Respondents,<br><br>COUNTY OF LOS ANGELES,<br><br>    Real Party in Interest and Appellant. | B276486<br><br>(Los Angeles County Super. Ct. No. BS153372) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Robert H. O'Brien, Judge. Modified and affirmed.

Rains Lucia Stern St. Phalle & Silver, Stephen H. Silver and Jacob A. Kalinski for Plaintiff and Appellant, Tod Hipsher.

Steven M. Berliner, Joung H. Yim and Christopher S.

Frederick for Real Party in Interest and Appellant, County of Los Angeles.

Steven P. Rice, Johanna M. Fontenot and Michel D. Herrera for Defendant and Respondent, Los Angeles County Employees Retirement Association.

Xavier Becerra, Attorney General, Thomas Patterson, Assistant Attorney General, Constance L. LeLouis, Deputy Attorney General and Anthony P. O'Brien, Deputy Attorney General, for Defendant and Respondent, the State of California.

_____

The Public Employees' Pension Reform Act of 2013 (Gov. Code, § 7522 et seq. [PEPRA])[1] was enacted, in part, to curb abuses in public pensions systems throughout the state. (*Alameda County Deputy Sheriff's Assn. v. Alameda County Employees' Retirement Assn.* (2018) 19 Cal.App.5th 61, 75 (*Alameda*), review granted Mar. 28, 2018, S247095.) Section 7522.72 provides a mechanism whereby a public pensioner forfeits a portion of his or her retirement benefits following a conviction of a felony offense that occurred in the performance of his or her official duties.[2]

---

[1] All undesignated statutory references are to the Government Code.

[2] Section 7522.72 provides, in pertinent part: "(b)(1) If a public employee is convicted by a state or federal trial court of any felony under state or federal law for conduct arising out of or in the performance of his or her official duties, in pursuit of the office or appointment, or in connection with obtaining salary, disability retirement, service retirement, or other benefits, he or she shall forfeit all accrued rights and benefits in any public

4

Shortly after appellant Tod Hipsher retired from the Los Angeles County Fire Department, he was convicted of a federal felony for directing an offshore gambling operation (18 U.S.C. § 1955).[3]  Respondent, the Los Angeles County Employees Retirement Association (LACERA), subsequently reduced Hipsher's vested retirement benefits based on the determination by the County of Los Angeles (County) that his gambling conduct was committed in the scope of his official duties (§ 7522.72).  Hipsher challenged LACERA's forfeiture determination by a

---

retirement system in which he or she is a member to the extent provided in subdivision (c) and shall not accrue further benefits in that public retirement system, effective on the date of the conviction.  [¶] . . . [¶]

"(c)(1) A member shall forfeit all the rights and benefits earned or accrued from the earliest date of the commission of any felony described in subdivision (b) to the forfeiture date, inclusive.  The rights and benefits shall remain forfeited notwithstanding any reduction in sentence or expungement of the conviction following the date of the member's conviction.  Rights and benefits attributable to service performed prior to the date of the first commission of the felony for which the member was convicted shall not be forfeited as a result of this section. [¶]. . .[¶]

"(d)(1) Any contributions to the public retirement system made by the public employee described in subdivision (b) on or after the earliest date of the commission of any felony described in subdivision (b) shall be returned, without interest, to the public employee upon the occurrence of a distribution event unless otherwise ordered by a court or determined by the pension administrator."  (§ 7522.72, subds. (b)-(d).)

[3] Section 1955 defines an illegal gambling business as an operation which (1) violates state law, (2) involves five or more persons, and (3) operated for a period in excess of thirty days, or has a gross revenue of $2,000 in any single day.

petition for writ of mandate and a complaint seeking declaratory relief.  The trial court entered a mixed judgment.  It issued a peremptory writ of mandate directing the County to afford adequate due process protections before reducing Hipsher's retirement benefits, while finding in favor of the defendants with respect to Hipsher's cause of action for declaratory relief.

Hipsher contends section 7522.72 is unconstitutional as applied to him because it impaired his contractual right to his vested pension, and is an unlawful ex post facto law.  The County disagrees and contends it owes Hipsher no additional due process and is not bound by the trial court judgment because it was not named as a respondent in the peremptory writ.

We conclude section 7522.72 is constitutionally sound, but that LACERA, not the County, bears the burden to afford Hipsher the requisite due process protections in determining whether his conviction falls within the scope of the statute.  Accordingly, we modify the judgment to require the County to provide the requisite due process, while affirming the remainder of the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

Hipsher was hired as a firefighter with the Los Angeles Fire Department in 1983.  Starting around 2001, he began conducting an illegal gambling operation in Orange and Los Angeles Counties, routing customer wages and profits through a company based in Costa Rica.  When bettors lost, Hipsher or his associates collected the amounts due under the terms of the wager.  Unbeknownst to Hipsher, beginning in approximately 2011, he recruited undercover agents from the Department of

6

Homeland Security and the Orange County District Attorney's Office to collect unpaid or past due gambling debts.

In October 2013, the United States Attorney filed a one-count information alleging Hipsher conducted, managed, supervised, directed and owned an illegal gambling business. (18 U.S.C. § 1955.) Hipsher retired from the fire department less than two months after the information was filed. He was convicted, the following year, of the charged offense pursuant to his guilty plea.

LACERA notified Hipsher that it was required to adjust his retirement benefits pursuant to section 7522.72. According to the letter, the Los Angeles County Department of Human Resources determined that Hipsher's conviction was job-related. This determination was based on investigation reports from the United States Department of Homeland Security.

According to these reports, Hipsher met with undercover federal agents at a fire station located in Bell, California. Hipsher had requested the meeting to discuss ongoing debt collections and obtain counterfeit merchandise for resale. The undercover agents presented themselves as motorcycle gang members. Hipsher gave them a tour of the fire station, allegedly showing them the room where he conducted part of the operation. The agents used covert audio and video recording devices during their meetings with Hipsher.

LACERA made the following adjustments to Hipsher's benefits:
- Expunging 12 years and nine months of service credits.
- Expunging $97,060.77 in contributions and $48,183.7 in interest from his retirement fund.
- Reducing his retirement allowance from $6,843.14 to

7

$2,932.42.

- Reducing the County's health care premium subsidy from 100 percent to 68 percent.
- Voiding the Board of Retirement decision granting him a service-connected disability retirement.

LACERA sent a letter to Hipsher's attorney confirming that there were no administrative remedies to challenge the benefit adjustment determination.[4]  Hipsher filed a petition for writ of mandate and complaint for declaratory relief.  He alleged that reduction of his vested retirement benefits constituted an unconstitutional ex post facto application of section 7522.72, violated the contract clause of the California Constitution, and was invalid because there was no nexus between his crime and the performance of his official duties.

The trial court requested supplemental briefing as to whether Hipsher had a due process right to his original retirement benefits and, if so, whether he was afforded sufficient due process protections.  In a lengthy statement of decision, the court issued judgment in favor of the defendants with respect to Hipsher's contract and ex post facto claims, and in favor of Hipsher with respect to the due process issue.  As to the latter, the court issued a peremptory writ of mandate directing

---

[4] According to the County, it recently "implemented an interim process consistent with the trial court's ruling, whereby the County provides notice to an employee and the right to respond in writing, if the County has a reasonable basis to believe that a conviction is job related and may result in pension forfeiture.  Such process is afforded to an employee prior to any notification to LACERA."  Notwithstanding this interim procedure, the County does not concede that any due process is required.

8

LACERA to set aside the reduction in Hipsher's pension benefits, and return the difference between his full pension and the allowance he received after the reduction.  The court also ordered the County to re-initiate proceedings under section 7522.72 in a manner that affords Hipsher sufficient due process protections.[5]

Both Hipsher and the County filed timely notices of appeal.

## DISCUSSION

We review questions regarding the constitutionality of a statute de novo.  (*Vergara v. State of California* (2016) 246 Cal.App.4th 619, 642.)  "The ultimate questions of whether vested contractual rights exist and whether impairments are unconstitutional present questions of law subject to independent review." (*Board of Administration v. Wilson* (1997) 52 Cal.App.4th 1109, 1129.)

### I

Hipsher contends section 7522.72 is unconstitutional as applied to him because his vested contractual right to receive a pension was not subject to reduction even if he was convicted of a job-related crime.

### A

The contract clause of the California Constitution prohibits the state from enacting a law impairing the obligation

---

[5] The trial court found the County "is free to devise whatever procedures it decides will best and most efficiently satisfy the requirements of due process"; however, these procedures must include (1) notice of the impending forfeiture, (2) an opportunity for the pensioner to submit evidence and refute the proposed forfeiture before an impartial decision maker, and (3) a written decision.

of contracts.  (Cal. Const., art. I, § 9.)  By this clause, the state's ability to modify its own contracts with other parties, or contracts between other parties, is limited.  (*Valdes v. Cory* (1983) 139 Cal.App.3d 773, 783 (*Valdes*).

"[O]nce a public employee has accepted employment and performed work for a public employer, the employee obtains certain rights arising from the legislative provisions that establish the terms of the employment relationship—rights that are protected by the contract clause of the state Constitution from elimination or repudiation by the state."  (*White v. Davis* (2003) 30 Cal.4th 528, 566.)

Not every contractual impairment runs afoul of the contracts clause.  (*Teachers' Retirement Board v. Genest* (2007) 154 Cal.App.4th 1012, 1026.)  "'The constitutional prohibition against contract impairment does not exact a rigidly literal fulfillment; rather, it demands that contracts be enforced according to their "just and reasonable purport" . . . .'"  (*Allen v. Board of Administration* (1983) 34 Cal.3d 114, 119-120 (*Allen*).)  An appellant who claims the calculation of his retirement benefits violates his vested contractual rights under the state contract clause has the burden of "'mak[ing] out a clear case, free from all reasonable ambiguity,' a constitutional violation occurred.  [Citation.]"  (*Deputy Sheriffs' Assn. of San Diego County v. County of San Diego* (2015) 233 Cal.App.4th 573, 578.)

There is a strong presumption that statutory amendments are constitutional.  (See *County of Sonoma v. State Energy Resources Conservation etc. Com.* (1985) 40 Cal.3d 361, 370.)  Any doubt as to the Legislature's power to act should be resolved in favor of the legislative action.  (*Alameda, supra,* 19 Cal.App.5th at p. 90.)  "The reason for the elevated burden on

10

plaintiffs raising a constitutional challenge under the contracts clause is this. "'The state occupies a unique position in the field of contract law because it is a sovereign power. This gives rise to general principles which may limit whether an impairment has [occurred] as a matter of constitutional law.'"" (*Cal Fire Local 2881 v. California Public Employees' Retirement System* (2016) 7 Cal.App.5th 115, 124 (*Cal Fire*).)

Analysis of a contract-clause claim requires a two-step process. First, the court assesses the nature and extent of any contractual obligation. (*Valdes*, *supra*, 139 Cal.App.3d at p. 785.) Here, it is clear Hipsher had a vested contractual right to certain retirement benefits. (See *Kern v. City of Long Beach* (1947) 29 Cal.2d 848, 855-856 [employee earns the right to pension after completing prescribed period of service] (*Kern*); *Betts v. Board of Administration of Public Employees' Retirement System* (1978) 21 Cal.3d 859, 863 [right to pension benefits accrues upon acceptance of employment].)

Second, if the rights at issue are vested, the court inquires into "the scope of the Legislature's power to modify" the contractual right. (*Valdes*, *supra*, 139 Cal.App.3d at p. 785.) Legislative deference is broad, as even "a substantial [contractual] impairment may be constitutional if it is 'reasonable and necessary to serve an important public purpose.' [Citation.]" (*Id*. at p. 790.) Here, section 7522.72 serves the important public purpose of ensuring the integrity of public pension systems. (See *Alameda*, *supra*, 19 Cal.App.5th at p. 75.)

A public employee's vested retirement benefits can be defeated upon the occurrence of a "condition subsequent." (*Kern*, *supra*, 29 Cal.2d at p. 853; *Betts v. Board of Administration of Public Employees' Retirement System*, *supra*,

11

21 Cal.3d at p. 863; *Dickey v. Retirement Board* (1976) 16 Cal.3d 745, 749.) *Kern* provided one example of a "condition subsequent"—lawful termination of employment before completion of the period of service—but did not define the term. (*Kern*, *supra*, 29 Cal.2d at p. 853.) We conclude a felony criminal conviction stemming from the pensioner's public service constitutes a condition subsequent, thus permitting a limited forfeiture of vested retirement benefits under section 7522.72.[6]

---

[6] Other states have reached a similar conclusion under pension forfeiture laws similar to section 7522.72. (E.g., *Hopkins v. Oklahoma Public Employees Retirement System* (10th Cir. 1998) 150 F.3d 1155, 1162 [right to pension benefits contingent upon public employee's "duty of honorable service"]; *Kerner v. State Employees' Retirement System* (1978) 72 Ill.2d 507, 514-515 [Illinois pension forfeiture law, following felony conviction, does not violate state's contract clause]; *Masse v. Board of Trustees* (1981) 87 N.J. 252, 256 [state legislature "must have intended honorable performance as a component of creditable service"]; *Hames v. City of Miami Firefighters' and Police Officers' Trust* (2008) 980 So.2d 1112, 1114 ["In Florida, a retired police officer forfeits all rights to receive public retirement benefits in excess of his or her accumulated contributions if the officer 'is convicted of a specified offense committed prior to retirement'"]; *Steigerwalt v. City of St. Petersburg* (1975) 316 So.2d 554, 556 [upholding pension law requiring sanctions against retired employee who commits misconduct]; *Booth v. Sims* (1994) 193 W.Va. 323, 338 ["If an employee engages in misconduct during his or her public service, he or she may forfeit rights to collect a pension later"]; *Bassett v. Pekin Police Pension Board* (2005) 362 Ill.App.3d 235 [police officer convicted of felony forfeits right to pension benefits, but is entitled to refund of pension contributions].)

12

The opinion of the Florida Supreme Court is particularly persuasive on this point: "Sanctions are commonly imposed to assure the faithful and honest discharge of the duties of the [public] employee.  What these sanctions should be, in the case of public employees, is peculiarly a function of the Legislature.  It involves the exercise of the law-making power.  This is, of course, not an unbridled power, but it is a power that should be interfered with by the judicial branch only when it is exercised in such an unreasonable, arbitrary and capricious manner, bearing no relation whatever to the valid objects of the Legislation, as to be violative of some specific constitutional provision such as equal protection or due process." (*Steigerwalt v. City of St. Petersburg, supra*, 316 So.2d at p. 556.)

Relying on *Allen, supra*, 34 Cal.3d 114, Hipsher contends LACERA is prohibited from modifying his pension benefits, no matter the malfeasance, without providing a "comparable new advantage."  We disagree.

*Allen* considered whether pension payments to retired legislators could be reduced pursuant to new statutory and constitutional language.  (*Allen, supra*, 34 Cal.3d at pp. 118-119.)  The Supreme Court reversed the trial court's conclusion that this violated the contract clauses of the state and federal constitutions.  (*Id.* at pp. 117, 125.)  But the court noted, in dicta, that with respect to active employees, any modification of a vested pension rights must (1) be reasonable, (2) bear a material relation to the theory and successful operation of a pension system, and (3) be accompanied by a "comparable new advantage." (*Id.* at p. 120.)  The court also observed that the scope of power is even more restrictive as to retired employees. (*Ibid.*)

13

However, subsequent case law has held that the term "must" permeating the *Allen* opinion was "[not] intended to be given the literal and inflexible meaning attributed to it." (*Marin Assn. of Public Employees v. Marin County Employees' Retirement Assn.* (2016) 2 Cal.App.5th 674, 698 (*Marin*).) Indeed, if *Allen* intended "must" to have a literal meaning, the retirees in that case would have prevailed on appeal, but they did not. (*Id*. at p. 699.) Thus, a modification of vested pension rights need not invariably be accompanied by a comparable new advantage. Indeed, it would be anomalous to suggest that the Legislature must reward an employee for conviction of a job-related felony by providing a new comparable advantage in the context of a section 7522.72 forfeiture.

Assuming Hipsher operated the gambling enterprise during the course of his official duties, such conduct constituted a condition subsequent permitting forfeiture of certain service credits pursuant to section 7522.72. There is a strong presumption that section 7522.72 is constitutional. (See *California Housing Finance Agency v. Patitucci* (1978) 22 Cal.3d 171, 175.) Hipsher fails to make out a clear case, free from reasonable ambiguity, that any contract clause violation occurred. (*Deputy Sheriffs' Assn.of San Diego County v. County of San Diego, supra*, 233 Cal.App.4th at p. 578.)

B

In *MacIntyre v. Retirement Board of City and County of San Francisco* (1941) 42 Cal.App.2d 734 (*MacIntyre*), the petitioners (police lieutenants) applied for retirement after satisfying all of the prerequisites of their retirement plans. Three days later, a complaint against each of the petitioners was submitted to the Board of Police Commissioners alleging

14

conduct unbecoming an officer, insubordination and disobedience of orders. (*Ibid*.) The Board found them "guilty" and dismissed them from the department. (*Id*. at p. 735.)

On appeal, petitioners contended their rights to a pension vested upon the filing of their retirement application and could not be defeated by their subsequent dismissal. (*MacIntyre, supra*, 42 Cal.App.2d at p. 735.) The Court of Appeal disagreed, concluding, "[i]t is assumed that upon acceptance of a position as an officer or employee of a governmental agency, an appointee will perform his duties conscientiously and faithfully." (*Ibid*.) Moreover, "[i]t is never contemplated that an officer or employee guilty of conduct warranting dismissal should continue in office or be permitted to receive other emoluments offered as an inducement to honesty and efficiency. The right to a pension is not indefeasible, and an employee, though otherwise entitled thereto, may not be guilty of misconduct in his position and maintain his rights notwithstanding such dereliction of duty." (*Ibid*.)

*MacIntyre* provides helpful guidance as to whether a public employee is categorically entitled to a full pension, regardless of misconduct, but it did not consider the constitutionality of the petitioner's retirement deprivation.

Hipsher urges us to apply the reasoning in *Skaggs v. City of Los Angeles* (1954) 43 Cal.2d 497. In *Skaggs*, the plaintiff, a police officer, was arrested for suspicion of bribery. (*Id*. at p. 499.) The chief of police relieved him from duty and filed charges of conduct unbecoming an officer. (*Ibid*.) Plaintiff was dismissed after he was convicted of bribery, but the Court of Appeal ultimately reversed the conviction. (*Ibid*.) Plaintiff then sought reinstatement to the force, but he was unsuccessful.

15

(*Ibid*.)  The pension board subsequently denied his application for a service pension.  (*Ibid*.)

Distinguishing *MacIntyre*, *supra*, 42 Cal.App.2d 734, the Supreme Court held that plaintiff's removal from office could not result in the forfeiture of his pension benefits because it was "not pursuant to any charter provision or specific legislation of any nature whatsoever but is merely a refusal of the pension board to grant plaintiff's application for retirement on pension." (*Skaggs v. City of Los Angeles*, *supra*, 43 Cal.2d at p. 503.) *Skaggs* does not apply to this case because the reduction to Hipsher's retirement benefits was executed pursuant to the legislative mandate in section 7522.72, not LACERA's unilateral refusal to pay his full pension.

Hipsher also contends his benefit forfeiture is barred by *Kern*, *supra*, 29 Cal.2d 848 and *Wallace v. City of Fresno* (1954) 42 Cal.2d 180 (*Wallace*).  We disagree.

In *Kern*, the petitioner requested retirement after completing 20 years of service as a firefighter.  (*Kern*, *supra*, 29 Cal.2d at p. 850.)  The city amended its charter to eliminate pensions altogether for members who, like petitioner, were not already eligible for retirement.  (*Ibid*.)  The Court of Appeal concluded (1) a public employee's vested contractual right to a pension "is not rigidly fixed by the specific terms of the legislation in effect during any particular period in which he serves," (2) the employee does not have a right to any fixed or definite benefits, but only to a "substantial or reasonable pension," and (3) the city violated its contractual obligations by enacting legislation that completely repealed petitioner's vested right to a pension.  (*Id*. at pp. 855–856.)

Hipsher's case is distinguishable from *Kern* for several

16

reasons. The issue in *Kern* was whether the pensioner's retirement benefits already had vested when the city eliminated pensions altogether. It is undisputed that Hipsher's benefits were fully vested when he retired in 2013, an event that took place before he pled guilty to the federal offense. Moreover, the repeal of the pension benefits in *Kern* did not stem from any misconduct, whereas Hipsher's case involves an alleged job-related felony. Finally, unlike the city in *Kern*, LACERA did not completely eliminate Hipsher's benefits; instead, it preserved the benefits attributable to service performed prior to the date of the first commission of his offense. (§ 7522.72, subd. (c)(1).)

In *Wallace*, a retired former police chief was convicted of preparing a fraudulent income tax return. (*Wallace, supra*, 42 Cal.2d at p. 181.) City ordinances gave the pension board discretion to terminate a retiree's pension following a conviction for a felony or a crime involving moral turpitude. (*Id*. at p. 182.) The pension board ordered the termination of Wallace's retirement benefits. (*Id*. at p. 181.) Citing *Kern*, the Supreme Court held the ordinances were invalid because they did not constitute a "reasonable modification" to *Wallace*'s vested pension. (*Id*. at p. 185.) In reaching this conclusion, *Wallace* noted that "termination of all pension rights upon conviction of a felony after retirement does not appear to have any material relation to the theory of the pension system or to its successful operation." (*Ibid*.)

Hipsher's case is different. In *Wallace*, the ordinance applied to any felony that occurred *after* the pensioner's retirement; section 7522.72 is limited to felonious conduct during the scope of the pensioner's official duties. (§ 7522.72, subd. (b)(1).) Moreover, section 7522.72 forfeitures are material

17

to the successful operation of public pension funds.
(See *Alameda*, *supra*, 19 Cal.App.5th at p. 75 [PEPRA was
enacted to help curb abuses in public pension systems].)  Section
7522.72 also does not eliminate all of the pensioner's vested
pension rights like the ordinances in *Wallace*; rather, it forfeits
the benefits accrued from the earliest date of the commission of
a qualifying felony offense.  (§ 7522.72, subd. (c)(1).)

Application of the forfeiture procedures under section
7522.72 was not unconstitutional as applied to Hipsher.

## II

Hipsher asserts the forfeiture provision in section 7522.72
violates the ex post facto clause of the California Constitution.
We disagree.

The state is barred from enacting ex post facto laws
under both the federal and California Constitutions.  (U.S.
Const., art. I, § 10, cl. 1; Cal. Const., art. I, § 9.)  The ex post
facto clause prohibits laws which "retroactively alter the
definition of crimes or increase the punishment for criminal
acts." (*Collins v. Youngblood* (1990) 497 U.S. 37, 43.)[7]  The
clause "ensures that individuals have 'fair warning' about the
effect of criminal statutes," and "'restrict governmental power by
restraining arbitrary and potentially vindictive legislation.'
[Citation.]" (*Landgraf v. USI Film Products* (1994) 511 U.S.
244, 266-267, fn. omitted.)

The prohibition against ex post facto legislation applies
almost exclusively to criminal statutes but, in limited
circumstances, it can apply to civil legislation.  (*Roman Catholic*

---

[7] The federal and state ex post facto clauses are interpreted
identically.  (*People v. Helms* (1997) 15 Cal.4th 608, 614.)

*Bishop of Oakland v. Superior Court* (2005) 128 Cal.App.4th 1155, 1162.) "Despite the Legislature's clear intent to establish civil, not criminal proceedings, we will find an ex post facto violation if the statutory scheme is so punitive in purpose or effect that it negates the Legislature's intentions. This requires the 'clearest proof,' however." (*Id.* at p. 1170.) Thus, the fact that a statute is labeled as civil is not dispositive. (*Id.* at p. 1162.)

"Whether a statutory scheme is civil or criminal under the ex post facto doctrine is first of all a question of statutory construction. We consider the statute's text and structure to determine the legislative objective. If we conclude that the statute as applied retroactively was intended to punish, then our inquiry is over and we will find an ex post facto violation. [Citation.]" (*Roman Catholic Bishop of Oakland v. Superior Court, supra,* 128 Cal.App.4th at p. 1169.)

Section 7522.72 is a civil statute, and Hipsher concedes the Legislature did not intend it to be criminal in nature. He contends, however, that the purpose and effect of section 7522.72 are so punitive that it must be considered punishment. He is mistaken.

The purpose of PEPRA was, in part, "'to reset overly generous and unsustainable pension formulas for both current and future workers.'" (*Marin, supra*, 2 Cal.App.5th at pp. 681-682, quoting Little Hoover Com., Public Pensions for Retirement Security (Feb. 2011), p. 53.) Stated another way, PEPRA was enacted "in an attempt to curb what were seen as pervasive abuses in public pension systems throughout California, . . ." (*Alameda, supra*, 19 Cal.App.5th at p. 75.)

"Only the 'clearest proof' will suffice to override the

19

Legislature's stated intent and render a nominally civil statute penal for ex post facto purposes. [Citation.]" (*21st Century Insurance Co. v. Superior Court* (2005) 127 Cal.App.4th 1351, 1362.) In making this determination, courts consider the following seven factors: (1) whether the sanction involves an affirmative disability or restraint, (2) whether it has historically been regarded as a punishment, (3) whether it comes into play only on a finding of scienter, (4) whether its operation will promote the traditional aims of punishment—retribution and deterrence, (5) whether the behavior to which it applies is already a crime, (6) whether there is a rational alternative purpose, and (7) whether it appears excessive in relation to the alternative purpose assigned. (*Kennedy v. Mendoza-Martinez* (1963) 372 U.S. 144, 168-169 (*Mendoza-Martinez*).) These factors represent "'useful guideposts,'" but are "'neither exhaustive nor dispositive.'" (*Smith v. Doe* (2003) 538 U.S. 84, 97.)

The forfeiture in section 7522.72 satisfies the fifth factor because it applies to behavior which is already a crime. The fourth factor is arguably satisfied because the forfeiture will promote the traditional aims of punishment—retribution and deterrence. The remaining factors are not satisfied.

Regarding the first factor, the loss of retirement benefits does not constitute an "affirmative disability or restraint". "The paradigmatic restraint is imprisonment. [Citation.]" (*21st Century Insurance Co. v. Superior Court*, *supra*, 127 Cal.App.4th at p. 1364.) Unlike imprisonment or similar restraints on liberty, civil penalties such as a forfeiture of retirement benefits do not constitute an "affirmative disability or restraint." (See *ibid*.)

20

Turning to the second factor, a reduction in retirement benefits is not historically regarded as punishment in a penal sense. (See e.g., *United States v. Ursery* (1996) 518 U.S. 267, 270-271 [civil forfeitures do not constitute punishment]; *MacLean v. State Board of Retirement* (2000) 432 Mass. 339, 351-352 [revocation of pension benefits following a job-related conviction is not criminal punishment]; *Doherty v. Retirement Board of Medford* (1997) 425 Mass. 130, 136-137 [forfeiture of retirement benefits following a job-related conviction does not render statute "so punitive as to overcome its restitutionary purpose"].) Moreover, Hipsher's first claim of error is that section 7522.72 violates the *contracts* clause.

With respect to the third factor, scienter is not required because section 7522.72 applies to a conviction for "any felony" arising out of the performance of his or her official duties. (§ 7522.72, subd. (b).)

As to the sixth factor, one of the purposes underlying PEPRA was to curb pension abuse and ensure adequate funding of the system as a whole. (See *Alameda, supra,* 19 Cal.App.5th at p. 75.) Preserving the pension system by curbing abuses is a rational, nonpunitive purpose.

Turning to the seventh factor, the pension reduction effected by section 7522.72 is not excessive in relation to the alternative purpose assigned. The forfeiture is limited to the period during which the pensioner committed the job-related felony. (§ 7522.72, subd. (c)(1).) Moreover, any contributions to the fund made by the pensioner are returned "upon the

occurrence of a distribution event."[8]  (§ 7522.72, subd. (d)(1).)
The forfeiture in section 7522.72 is proportional to the
wrongdoing.

We conclude the *Mendoza-Martinez* factors do not override
the legislative intent underlying PEPRA.  Hipsher fails to
demonstrate his case falls within the "limited circumstances" in
which the ex post facto clause applies to civil legislation.

III

The County contends the trial court erred by issuing the
writ of mandate because (1) Hipsher was not owed any
additional due process prior to the reduction to his retirement
benefits, (2) any additional due process, if owed, must be
provided by LACERA, and (3) the County was not named as a
respondent in the writ.[9]

LACERA asserts the writ was erroneously issued because
(1) it had a ministerial duty to adjust Hipsher's retirement
benefits once the County provided notice of Hipsher's job-related
felony conviction, (2) the Legislature did not intend due process
other than the process in the underlying criminal proceeding
itself, and (3) the County should provide any additional process
owed to Hipsher.

---

[8] "Distribution event" includes separation from
employment, death, or retirement.  (§ 7522.72, subd. (d)(3).)

[9] The caption page of the peremptory writ names LACERA
as the respondent and the County as a real party in interest;
however, the text of the writ itself names both LACERA and the
County as respondents.  This contention is moot in light of our
disposition regarding the County's second argument.

*A. Standard of Review*

When reviewing a trial court's ruling on a writ of mandate, "'"the appellate court is ordinarily confined to an inquiry as to whether the findings and judgment of the trial court are supported by substantial, credible and competent evidence. This limitation, however, does not apply to resolution of questions of law where the facts are undisputed. In such cases, as in other instances involving matters of law, the appellate court is not bound by the trial court's decision, but may make its own determination."' [Citations.]" (*Alameda*, *supra*, 19 Cal.App.5th at pp. 89–90.)

*B. The Reduction to Hipsher's Vested Pension Implicated His Due Process Rights*

A person may not be deprived of life, liberty or property without due process of law. (U.S. Const., 14th Amend.; Cal. Const., art. I, § 7, subd. (a).) The due process clause protects an individual's liberty interest in freedom from arbitrary adjudicative procedures. (*People v. Ramirez* (1979) 25 Cal.3d 260, 264, 268.) The requirements of due process extend to administrative adjudications. (*Today's Fresh Start, Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197, 214.)

The threshold question is whether Hipsher's retirement benefits are a property interest encompassed within Fourteenth Amendment protection. We conclude that they are.

The refusal to pay a public retiree's vested benefits is an act under color of state law. (See *Thorning v. Hollister School Dist.* (1992) 11 Cal.App.4th 1598, 1610.) The deprivation of a public employee's vested pension invokes a property right, "'the taking of which would be a denial of Due Process.'" (*Ibid*.; accord, *Pearson v. Los Angeles County* (1957) 49 Cal.2d 523,

23

532.) As articulated by the Supreme Court of the United States, "[t]he Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits." (*Board of Regents of State Colleges v. Roth* (1972) 408 U.S. 564, 576.)

These decisions make clear that some form of due process is required before the state may reduce a pensioner's vested retirement benefits. To allow otherwise would invite the kind of arbitrary and capricious conduct the due process clause seeks to avoid. (See *Nebbia v. New York* (1934) 291 U.S. 502, 525.)

*C. What Process is Required?*

A public employee who commits a job-related felony "shall forfeit" all benefits, other than their own contributions, earned from the earliest date of the commission of a qualifying felony. (§ 7522.72, subds. (b)(1), (c)(1).) However, section 7522.72 does not provide a mechanism for the pensioner to challenge an adverse decision.

When protected interests are implicated, as they are in this case, we must decide what procedures are required to satisfy due process. (*Murden v. County of Sacramento* (1984) 160 Cal.App.3d 302, 307.) The answer is evident when the conviction, on its face, necessarily stems from a public employee's performance of official duties. (E.g., Pen. Code, §§ 424 [embezzlement of public funds]; 68 [receipt of bribe by public officer]; 425 [negligent handling of public moneys]; 86 [receipt of bribe by legislator]; § 93 [receipt of bribe by judicial officer]; § 118.1 [false statement in criminal report by peace

24

officer]; 289.6, subd. (i) [sexual activity with confined adult by public employee with prior conviction].)[10]

The criminal proceeding leading to conviction of a crime that per se involves the public employee's official duties and which therefore, as a matter of law, subjects the employee to benefit forfeiture under section 7522.72, necessarily satisfies any due process concerns. "In such cases there is no real necessity to examine the facts, resolve any conflicts in the evidence, and exercise any judgment with respect thereto, [because] the only question is a legal one, i.e., whether the [person] was convicted of a crime of the character specified in the statute [Citations.] In these cases due process is satisfied because the [person] had his day in court when he was put to trial for and convicted of the commission of such crime. [Citation.]" (*Slaughter v. Edwards* (1970) 11 Cal.App.3d 285, 294.)

### 1. *Hipsher Was Deprived of Due Process*

The issue is more complex when the crime does not necessarily arise from the scope of the pensioner's public duties. (See e.g., *Slaughter v. Edwards*, *supra*, 11 Cal.App.3d at p. 294 [in cases where the conviction itself is not dispositive, an independent examination is required].) That is the case before us. Hipsher's crime for operating an illegal gambling business (18 U.S.C. § 1955) did not, on its face, involve the performance of his official duties. Nor does the statement of facts set forth in Hipsher's plea agreement reference where he conducted the gambling operation. He admitted the gambling violation but did

---

[10] This is by no means an exhaustive list of qualifying crimes.

25

not admit that it occurred in the performance of his public employment.

In determining that Hipsher's conviction was job-related, and therefore qualified as a basis for forfeiture under section 7522.72, the County Human Resources manager relied on Homeland Security reports prepared as part of the investigation of Hipsher's federal criminal case.[11]  It appears Hipsher was not notified of this review.  The County then sent a referral letter to LACERA indicating Hipsher's conviction was related to his job.  Hipsher was not sent a copy of that letter.

LACERA automatically reduced Hipsher's retirement benefits upon receiving the referral letter.  The letter notes that "[s]ince the law requires the felony to be job related, the County Department of Human Resources (DHR) is responsible for making a determination that the felony is job-related."

We conclude that the County's exclusive reliance on the Homeland Security investigation reports did not provide Hipsher notice and an opportunity to be heard as to whether his conviction qualifies as a job-related felony offense under section 7522.72.

"In administrative proceedings, the requisites of due process will vary according to the competing interests at issue, so long as basic requirements of notice and hearing are satisfied. [Citations.]"  (*Rupf v. Yan* (2000) 85 Cal.App.4th 411, 428-429.)  At a minimum, Hipsher was entitled to written notice reasonably calculated to apprise him of the pendency of the

---

[11] Homeland Security reports, like police reports, are not part of the record of conviction.  (Cf. *Draeger v. Reed* (1999) 69 Cal.App.4th 1511, 1523.)

26

section 7522.72 action, and the right to present his objections before an impartial decision maker. (*Bergeron v. Department of Health Services* (1999) 71 Cal.App.4th 17, 24 [due process requires opportunity to present objections]; *Haas v. County of San Bernardino* (2002) 27 Cal.4th 1017, 1025 [due process requires the adjudicator to be impartial].) "'A formal hearing, with full rights of confrontation and cross-examination is not necessarily required. [Citation.]'" (*Bergeron*, at p. 23.) Indeed, the County now affords this model of process to pensioners who may be subject to forfeiture pursuant to section 7522.72.[12]

*2. Hipsher was Prejudiced by the Denial of Due Process*

The County contends that even assuming Hipsher was entitled to some form of additional due process, he was not prejudiced by any deficiency in process. Generally, a party is not deprived of due process in an administrative proceeding unless the deficiency in process resulted in prejudice. (See *Hinrich v. County of Orange* (2004) 125 Cal.App.4th 921, 928 [procedural due process violations assessed for harmlessness].)

In this case, insofar as the record shows, prejudice is evident because (1) Hipsher's conviction does not, on its face, satisfy the forfeiture provisions of section 7522.72, (2) the verified petition for writ of mandate rejected the notion that his conviction arose out of the performance of his official duties, (3) information contained in the Homeland Security reports is not part of the record of conviction, and (4) Hipsher was not given notice or an opportunity to contest the allegation that his felony conviction was job-related.

We conclude Hipsher was prejudicially denied his constitutionally protected due process rights. At a minimum,

---

[12] See footnote 4, *ante*.

Hipsher was entitled to notice of the proposed forfeiture under section 7522.72, along with an opportunity to contest his eligibility for forfeiture before an impartial decision maker.  The remaining issue is which public entity is required to adjudicate these rights.

*D.  Section 7522.72 is Ambiguous as to Which Agency is Tasked with Determining Whether the Offense is Job-Related*

The final question is whether the County or LACERA is obligated to afford the required due process.  The trial court found the County was obliged to do so because it is "the governmental entity that made the decision that ultimately deprived Petitioner of his property."  We disagree.

The judiciary's role in construing a statute is to ascertain the intent of the Legislature so as to effectuate the purpose of the law.  (*Merced Irrigation District v. Superior* Court (2017) 7 Cal.App.5th 916, 924 (*Merced*).)  To this end, courts start with the words of the statute, giving them their usual and ordinary meaning.  (*Ibid*.)

Section 7522.72 requires the prosecuting agency, within 60 days after a qualifying conviction, to notify the public employer who employed the employee at the time of the commission of the felony of (1) the date of conviction, and (2) the date of the first known commission of the felony.  (§ 7522.72, subd. (e)(1).)  In turn, the public employer is required to notify the public retirement system of the employee's qualifying conviction within 90 days of the conviction.  (§ 7522.72, subd. (f).)  Section 7522.72 does not address which entity determines whether the pensioner's conviction was connected to his or her official duties.

"When statutory language is susceptible to more than one

reasonable interpretation, courts must (1) select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute and (2) avoid an interpretation that would lead to absurd consequences. [Citation.]" (*Merced*, *supra*, 7 Cal.App.5th at p. 925.) One difficulty in ascertaining the intent of the Legislature is that, in many cases, the Legislature ""'had no real intention, one way or another, on the point in question; that if they had, they would have made their meaning clear . . . .'"" [Citation.]" (*Ibid.*)

This difficulty is present here because nothing in the text or legislative history of section 7522.72 contemplated that the pensioner's conviction would not, on its face, arise out of the performance of his or her official duties. Given that section 7522.72 is ambiguous, "[w]e must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences. [Citation.]" (*People v. Jenkins* (1995) 10 Cal.4th 234, 246.)

*E. LACERA Shall Afford the Requisite Due Process*

LACERA contends "it is reasonable to conclude that the Legislature intended that the employer make the ultimate determination whether the elements under Section 7522.72 [have] been satisfied and to report this information to the retirement system." In essence, LACERA asserts it had a ministerial duty to initiate forfeiture proceedings once the County reported Hipsher's job-related conviction, pursuant to its duty set forth in section 7522.72, subdivision (f).

The California Constitution provides that the retirement

29

board of each public pension holds the "sole and exclusive responsibility" to administer the system. (Cal. Const. art. XVI, § 17, subd. (a).) To this effect, "LACERA's Board of Retirement [citation] is charged with the responsibility of ascertaining the eligibility for and paying pension benefits to eligible employees . . . ." (*Weber v. Board of Retirement of Los Angeles County Retirement Association* (1998) 62 Cal.App.4th 1440, 1442.)

Indeed, once a person has separated from his or her public employment, the County's Civil Service Commission "has no further jurisdiction except in the limited situations specified in the governing constitutional charter or statutory provisions." (*Zuniga v. Los Angeles County Civil Service Commission* (2006) 137 Cal.App.4th 1255, 1260.) Section 7522.72 does not expressly include any such provision; thus, in imposing a reporting duty on the County, the statute does not disregard the established rule that the retirement board of a public pension— here, LACERA—has the obligation to determine eligibility or ineligibility for pensions.

Subdivision (f) requires the public employer to notify the retirement system of the employee's qualifying conviction "within 90 days of the conviction." (§ 7522.72, subd. (f).) Were the County responsible for providing the necessary due process then, within 90 days of the conviction, it would have to (1) discover the conviction, (2) comb through the criminal records (which often span thousands of pages) to determine whether it qualifies as a job-related felony, (3) provide notice to the pensioner, (4) determine the earliest date of commission, (5) give the employee an opportunity to contest the County's preliminary finding, (6) render a decision, and (7) perhaps

30

provide additional layers of administrative review.[13]  Requiring this entire process to be completed within 90 days would produce an unworkable procedure.  We are bound to interpret statutes so as to avoid "unworkable" results.  (*Los Angeles Unified School District v. Garcia* (2013) 58 Cal.4th 175, 194.)

Section 7522.72 also provides that "[t]he operation of *this section* is not dependent upon the performance of the [employer's] notification obligations specified in this subdivision."  (§ 7522.72, subd. (f), emphasis added.)  It appears "this section" means all of section 7522.72, and is not limited to the public employer's reporting obligations.  (See *People v. Neely* (2004) 124 Cal.App.4th 1258, 1262 [reference to "this section" of a statute means the entire statute].)  Contrary to LACERA's interpretation, the forfeiture obligation in section 7522.72 is independent of the employer's reporting obligations.

Our conclusion is further supported by *Danser v. California Public Employees' Retirement System* (2015) 240 Cal.App.4th 885 (*Danser*).  There, a judge was convicted of conspiring to obstruct justice while serving as a superior court judge.  (*Id*. at p. 887.)  The judge retired from office after the conviction but before sentencing.  (*Id*. at p. 888.)  The court later reduced the felony to a misdemeanor, terminated probation and dismissed the charges.  (*Id*. at p. 887.)  California's Public Employees' Retirement System subsequently determined that the judge had been convicted of a felony offense in the course

---

[13] "For example, if the administrative proceeding includes a right to appeal an allegedly improper action, a plaintiff must generally pursue that administrative appeal in order to exhaust his or her administrative remedies."  (*Clews Land & Livestock, LLC v. City of San Diego* (2017) 19 Cal.App.5th 161, 184.)

31

and scope of his judicial duties, and therefore was subject to benefit forfeiture under section 75526.[14] (*Id.* at p. 888.)

The judge unsuccessfully challenged the forfeiture determination by a petition for writ of mandate. (*Danser*, *supra*, 240 Cal.App.4th at p. 888.) Pertinent here, the judge argued on appeal that the retirement system lacked jurisdiction to interpret criminal laws in order to determine whether forfeiture was appropriate. (*Id.* at p. 891.) The Court of Appeal held "CALPERS acted within its authority in interpreting the [applicable] retirement law" because it is charged with administering the retirement system, and "is responsible for determining the right of a public pension system member to receive benefits. [Citation.]" (*Ibid.*) *Danser* supports our conclusion that the retirement board is the adjudicatory entity with authority to determine whether forfeiture of Hipsher's retirement benefits was warranted.

Finally, LACERA contends that "requiring the retirement system to provide due process is not workable" because "review by the retirement system would place the retirement system in the unseemly position of determining the propriety of decisions expressly given by the Legislature to the prosecutor and the employer." This argument misstates the prosecutors' and employers' obligation under section 7522.72, which is merely to report the conviction.

---

[14] Section 75526 provides that a judge who is convicted of a crime committed while holding judicial office, that is punishable as a felony, and which either involves moral turpitude under that law or was committed in the course and scope of performing the judge's duties, forfeits any retirement benefits beyond the amount of his or her contributions to the system.

(§ 7522.72, subds. (e) & (f).)

Further, LACERA has not shown that providing due process is "not workable." In fact, LACERA has an existing mechanism for administrative appeals "when an individual disagrees with LACERA's decision on matters related to his or her . . . retirement benefits, . . ." (LACERA Website, Administrative Appeal Procedure, <https://www.lacera.com/ BoardResourcesWebSite/BoardOrientationPdf/admin_appeal_pr ocedure.pdf> [as of June 8, 2018].)[15] This procedure includes three levels of review, culminating in an appeal to the Board of Retirement, placement on the Board's agenda, and a written decision from LACERA's Legal Office. (*Ibid*.) In any event, the fact that providing constitutional due process is burdensome does not excuse the failure to provide it.

Based on the foregoing, we conclude LACERA is obligated to afford Hipsher due process protections in accordance with its existing administrative appeal procedures, and consistent with this opinion.

## DISPOSITION

The judgment is modified to reflect that LACERA, not the County, shall afford the requisite due process. This process shall conform with LACERA's existing administrative

---

[15] On May 3, 2018, the County filed a request for judicial notice of LACERA's administrative appeal process. The County's request for judicial notice is granted. (Evid. Code, §§ 459 [permitting judicial notice of any matter specified in Evidence Code section 452], 452, subd. (h) [permitting judicial notice of "[f]acts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy"].)

33

procedures and, at a minimum, provide Hipsher (1) notice of LACERA's intent to initiate forfeiture proceedings, and the reasons therefor, and (2) an opportunity to present his objections, before LACERA's impartial decision maker, regarding whether he falls within the scope of section 7522.72. The judgment is affirmed as modified. Each party shall bear its own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(3).)

CERTIFIED FOR PUBLICATION


                        EPSTEIN, P. J.

We concur:


WILLHITE, J.


MANELLA, J.

34