Filed 12/15/20
Opinion on remand from Supreme Court

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| TOD HIPSHER, | B276486 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BS153372) |
| v. | |
| LOS ANGELES COUNTY EMPLOYEES RETIREMENT ASSOCIATION et al., | |
| Defendants and Respondents, | |
| COUNTY OF LOS ANGELES, | |
| Real Party in Interest and Appellant. | |

APPEAL on remand from the California Supreme Court, from a judgment of the Superior Court of Los Angeles County, Joanne B. O'Donnell (retired) and Robert H. O'Brien, Judges. Affirmed as modified and remanded.

Rains Lucia Stern St. Phalle & Silver, Stephen H. Silver and Jacob A. Kalinski for Plaintiff and Appellant, Tod Hipsher.

Xavier Becerra, Attorney General, Thomas S. Patterson, Assistant Attorney General, Benjamin M. Glickman, Supervising Deputy Attorney General, Anna T. Ferrari and Anthony P. O'Brien, Deputy Attorneys General, for Defendant and Respondent State of California.

Steven P. Rice, Michael D. Herrera and Johanna M. Fontenot for Defendant and Respondent Los Angeles County Employees Retirement Association.

Liebert Cassidy Whitmore, Joung H. Yim and Steven M. Berliner for Real Party in Interest and Appellant County of Los Angeles.

**SUMMARY**

Shortly after plaintiff and appellant Tod Hipsher retired from the Los Angeles County Fire Department (LAFD), he was convicted of a federal felony for directing an offshore gambling operation. Defendant and respondent, Los Angeles County Employees Retirement Association (LACERA), subsequently reduced Hipsher's vested retirement benefits under the Public Employees' Pension Reform Act of 2013 (Gov. Code, § 7522 et seq.[1] (PEPRA)), based on a determination by defendant County of Los Angeles (County) that Hipsher's felonious conduct was committed in the scope of his official duties. Section 7522.72 of PEPRA, at issue here, provides a mechanism requiring that a public pensioner employed prior to PEPRA's effective date (commonly referred to as a "legacy employee") forfeit a portion of his or her retirement benefits following a conviction of a felony offense occurring in the performance of the pensioner's official public duties.

---

[1]    Subsequent undesignated statutory references are to the Government Code.

2

Hipsher challenged LACERA's forfeiture determination by a petition for writ of mandate and a complaint seeking declaratory relief. The trial court issued a peremptory writ of mandate directing the County to afford adequate due process protections before reducing Hipsher's retirement benefits, but found in favor of defendants on Hipsher' claim for declaratory relief. On appeal, we determined that section 7522.72 is constitutionally sound, but that LACERA, not the County, bears the burden to afford Hipsher the requisite due process protections to determine whether his conviction falls within the scope of that statute. (See *Hipsher v. Los Angeles County Employees Retirement Assn.* (2018) 24 Cal.App.5th 740, 756, 762–767 (*Hipsher I*), vacated by *Alameda County Deputy Sheriffs' Assn. v. Alameda County Employees' Retirement Assn.* (2020) 9 Cal.5th 1032 (*Alameda County*).

This case is before us a second time after the California Supreme Court granted Hipsher's petition for review, deferred briefing and transferred the matter back to this court with directions to vacate our prior decision and reconsider the cause in light of its decision in *Alameda County, supra,* 9 Cal.5th 1032. In *Alameda County*, the Court articulated a multi-step test for analyzing contract clause claims in the public employee pension context.

After reviewing the matter, we conclude that *Alameda County* confirms our prior holding that section 7522.72's public purpose—to protect the pension system from abusive practices of faithless public employees and preserve public trust in government—justifies any concomitant diminution in Hipsher's pension rights. We also conclude anew that section 7522.72 need not provide a comparable advantage to offset disadvantages Hipsher may suffer as a result of Legislative changes to the public employee retirement system enacted decades after he began his employment. Such a requirement would be antithetical to the statute's purpose by unfairly enriching a

3

malfeasant legacy employee for engaging in the very sort of abusive practices section 7522.72 is intended to curb.

Further, in accordance with the portion of our prior decision—as to which Hipsher did not seek review by the California Supreme Court—we conclude that section 7522.72 is not an unconstitutional ex post facto law, and that Hipsher is entitled to appropriate administrative due process. Accordingly, we will modify the trial court's judgment and remand the matter with instructions for LACERA to provide Hipsher appropriate notice of its intent and the reasons for its initiation of forfeiture proceedings, and an opportunity to present his objection to LACERA's impartial decisionmaker whether he falls within the scope of section 7522.72. In all other respects, we affirm the judgment, as modified.

### FACTUAL AND PROCEDURAL BACKGROUND

*PEPRA's Enactment and Purpose*

PEPRA became effective January 1, 2013. The Legislature enacted PEPRA, in part, to curb abusive public pension practices throughout the state. The provision of PEPRA at issue here is section 7522.72, which provides a mechanism requiring partial forfeiture of a public employee's retirement benefits following a conviction of a felony offense that occurred in the scope of performance of his or her official duties. Pertinent provisions of section 7522.72 in effect at the time of Hipsher's retirement, provided:

> "(a)  This section shall apply to a public employee first employed by a public employer or first elected or appointed to an office before January 1, 2013, and, on and after that date, Section 7522.70 shall not apply.
>
> "(b)(1)  If a public employee is convicted by a state or federal trial court of any felony under state or federal law for conduct arising out of or in the performance of his or her official duties, . . . he or she shall forfeit

4

all accrued rights and benefits in any public retirement system in which he or she is a member to the extent provided in subdivision (c) and shall not accrue further benefits in that public retirement system, effective on the date of the conviction.  [¶]  . . .  [¶]

"(c)(1)  A public employee shall forfeit all the retirement benefits earned or accrued from the earliest date of the commission of any felony described in subdivision (b) to the forfeiture date, inclusive.  The retirement benefits shall remain forfeited notwithstanding any reduction in sentence or expungement of the conviction following the date of the public employee's conviction.  Retirement benefits attributable to service performed prior to the date of the first commission of the felony for which the public employee was convicted shall not be forfeited as a result of this section.  [¶]  . . .  [¶]

"(d)(1)  Any contributions to the public retirement system made by the public employee described in subdivision (b) on or after the earliest date of the commission of any felony described in subdivision (b) shall be returned, without interest, to the public employee upon the occurrence of a distribution event."  (Stats. 2012, ch. 296, § 15.)[2]

This appeal is among several actions that have challenged provisions of PEPRA arguing that it impairs employees' vested rights in violation of the contract clause of the California Constitution.[3]  The California Supreme

---

[2]     Amendments in 2013 and 2014 eliminated gender specificity, expanded the forfeiture in subdivision (c)(1) to "rights" as well as benefits, and replaced "public employee" in that subdivision with "member."  (Stats. 2013, ch. 528, § 13; Stats. 2014, ch. 238, § 3.)

[3]     See *Marin Assn. of Public Employees v. Marin County Employees' Retirement Assn.* (2016) 2 Cal.App.5th 674, review dismissed, and remanded by Order No. S237460), filed Sept. 23, 2020); *Cal Fire Local 2881 v. California Public Employees' Retirement System* (2016) 7 Cal.App.5th 115, affirmed by *Cal Fire Local 2881 v. California Public Employees' Retirement System* (2019) 6 Cal.5th 965 (*Cal Fire*); *Alameda County Deputy Sheriff's Assn. v. Alameda County Employees' Retirement Assn.* (2018) 19 Cal.App.5th 61, reversed by *Alameda County, supra,* 9 Cal.5th 1032; *Wilmot v. Contra Costa County Employees' Retirement Assn.* (2018) 29 Cal.App.5th 846, vacated and transferred by Order No. S252988), filed Sept. 23, 2020).

Court has rejected similar challenges, concluding the challenged provisions of PEPRA are consistent with the contract clause.  (See *Alameda County, supra*, 9 Cal.5th 1032, and *Cal Fire, supra,* 6 Cal.5th 965.)

*Hipsher's Public Employment, Felony Conviction and Pension Reduction*

Hipsher was employed by the LAFD from 1983 to early 2013. Beginning in 2001 and continuing for at least 12 years, Hipsher ran an illegal international gambling business routing customers, wagers and profits through a company in Costa Rica.  Hipsher was alleged to have run the illegal gambling enterprise out of his LAFD office while performing his official duties, using resources of his public employer.  In 2013, following an undercover operation by the Department of Homeland Security, a federal indictment was filed  against Hipsher alleging charges of owning and directing an illegal offshore gambling operation, a felony.  (18 U.S.C. § 1955.) Two months after his indictment, Hipsher retired from the LAFD.  Hipsher pled guilty of the charged offense and was convicted in 2014.  Following Hipsher's conviction, LACERA reduced Hipsher's annual pension benefits under section 7522.72 from approximately $82,000 to about $35,000, retroactive to April 2001 through December 2013, based on his job-related felony conviction.[4]  (See *Hipsher I,  supra,* 24 Cal.App.5th at pp. 749–750.)

*Trial and Appellate Court Proceedings*

Hipsher filed the instant petition for writ of mandate challenging LACERA's forfeiture determination and a complaint seeking declaratory

---

[4]      Concomitantly, LACERA returned to Hipsher pension contributions he had made during the same period of about $48,000.

6

relief.[5]  He challenged the constitutionality of section 7522.72 under the contract clause of the California Constitution, alleged that reduction of his vested retirement benefits constituted an unconstitutional ex post facto application of section 7522.72, and claimed the reduction was invalid because there was no nexus between his crime and the performance of his official duties.  (*Hipsher I, supra*, 24 Cal.App.5th at p. 750.)  The trial court issued judgment in favor of LACERA and the State as to Hipsher's contract and ex post facto claims.  (*Ibid.*)  In addition, after requesting and reviewing supplemental briefing as "to whether Hipsher had a due process right to his original retirement benefits and, if so, whether he [had been] afforded sufficient due process protections," the court issued a peremptory writ of mandate directing LACERA to set aside the reduction in Hipsher's pension benefits and return the difference between his full pension and his allowance after the reduction.  The trial court also ordered the County to reinitiate administrative proceedings under section 7522.72 in a manner that would afford Hipsher sufficient due process protections.  (*Ibid*.)  Hipsher and the County each filed an appeal.

We concluded that section 7522.72 did not unconstitutionally impair Hipsher's pension rights, on the ground that a legacy employee's criminal abuse of his position as a public employee constitutes a valid "condition subsequent" to modify his pension rights, and the felony forfeiture provision of section 7522.72 "serves the important public purpose of ensuring the integrity of public pension systems." (*Hipsher I, supra*, 24 Cal.App.5th at p.

---

[5]  In addition to LACERA, Hipsher sued the County and defendant and respondent State of California (State).

7

752.)[6]  Further, we found that California law does not require that Hipsher receive a corresponding benefit to offset the reduction in his retirement benefits.  Indeed, we concluded it would be "anomalous," in light of the purposes for which PEPRA was enacted, to reward Hipsher with a comparative advantage for his criminal conduct.  (*Id.* at p. 754.)  Nevertheless, we concluded that LACERA must afford Hipsher requisite due process protections to determine whether his conviction falls within the scope of the statute.  We modified the judgment to require LACERA to provide Hipsher administrative due process and affirmed the remainder of the judgment.

The California Supreme Court granted Hipsher's petition for review and held the case pending its decision in *Alameda County*.  On September 23, 2020, the Supreme Court transferred this matter back to this Court "with directions to vacate [our] decision [in *Hipsher I*] and to reconsider the cause in light of [*Alameda County*]."[7]

---

[6]  The question whether Hipsher's criminal conduct was job-related remains unresolved.  Our focus is on the constitutionality of section 7522.72.  In assuming as a threshold matter that provision of section 7522.72 correctly applies to Hipsher's case, we take no position on whether his criminal conduct "ar[ose] out of or in the performance of his . . . official duties."  (§ 7522.72, subd. (b)(1).)  As discussed at Section V, below, it remains LACERA's obligation to establish, in accordance with requisite principles of due process, that Hipsher's criminal conduct was indeed job-related.  (*Hipsher I, supra,* 24 Cal.App.5th at pp. 759–767.)

[7]  That same date, the Supreme Court also transferred another challenge to section 7522.72 back to the appellate court.  (See *Wilmot, supra,* 29 Cal.App.5th 846, No. S252988, Order filed Sept. 23, 2020.)  In that action, our colleagues in the First District affirmed a trial court's denial of an employee's writ petition and held section 7522.72's felony forfeiture requirements applied to the employee.  However, the court declined to rule on his claim that section 7522.72 violated his rights to a vested pension benefit under the State Constitution's contract clause (Cal. Const. art. I, § 9).  (*Id.* at pp. 862, 863.)  The Supreme Court

## DISCUSSION

Hipsher's appeal raise two principal contentions based on his understanding of *Alameda County*: Section 7522.72 is unconstitutional as applied to him because the statutory modifications bear no material relation to the theory of a pension system and its successful operation, and also impair his vested right to receive retirement benefits without being accompanied by an offset of comparable advantage. Second, Hipsher maintains this Court cannot apply a "condition subsequent" analysis to save section 7522.72, as neither *Alameda County* nor any precedent holds that a felony conviction stemming from a pensioner's public service may be considered a condition subsequent permitting forfeiture of vested retirement benefits. We address Hipsher's contentions in reverse order. First, however, we turn to the decision in *Alameda County, supra,* 9 Cal.5th 1032.

I.     *The Supreme Court's Decision in Alameda County*

After granting Hipsher's petition for review, the Supreme Court vacated our decision in *Hipsher I,* and returned this action to us with directions to reconsider the matter in light of its decision in *Alameda County*.

In *Alameda County,* the Court considered whether PEPRA's statutory amendments to the County Employees Retirement Law of 1937 (CERL; § 31450 et seq.) impaired employees' vested rights in violation of the contract clause of the California Constitution. (Cal. Const., art. I, § 9.) For employees of California counties that administer their retirement systems under CERL,

granted review and, together with this matter, held the case pending its decision in *Alameda County*. (*Wilmot, supra*, Order filed Feb. 13, 2019.) In its transfer order, the Supreme Court ordered the First District "to vacate its decision and to reconsider the cause in light of [*Alameda County*]," and specifically "to address and resolve petitioner's claim under the contract clause of the California Constitution." (Order filed Sept. 23, 2020.)

9

PEPRA modified the definition of "compensation earnable" to exclude certain items previously included (or arguably included), such as payments to enhance a member's retirement benefit, payments for services rendered outside normal working hours, and payments for unused leave, to the extent that the amount of leave cashed out exceeds the amount of leave that may be earned during each 12-month period of the final compensation period. (§ 31461.)[8]  The plaintiffs in *Alameda County* argued that legacy employees have a vested constitutional right to have their pension benefits calculated using the pre-PEPRA definition of "compensation earnable," which they alleged included the special pay items.  The plaintiffs argued that PEPRA's amendments to section 31461—excluding the special pay items from the definition of "compensation earnable"—unconstitutionally impaired their vested rights to pension benefits.  (*Alameda County, supra*, 9 Cal.5th at p. 1064.)

The Supreme Court rejected these arguments and sustained section 31461 under the contract clause of the California constitution.  In so doing, the Court altered the California Rule,[9] instructing courts to use the following analysis to evaluate the constitutionality of statutory modifications of public

---

[8]    Some employees took advantage of these pay items and statutory ambiguities to "spike" their pensions by having their benefits calculated on an artificially inflated basis of "compensation earned" during their last year of employment. (*Alameda County, supra*, 9 Cal.5th at pp. 1089–1090.)

[9]    The scope of constitutional protections afforded public pension rights (commonly referred to as the "California Rule"), has been established by numerous Supreme Court decisions, including, most prominently, *Allen v. City of Long Beach* (1955) 45 Cal.2d 128 (*Allen I*). (See *Cal Fire, supra,* 6 Cal.5th at p. 971 [declining to address the continued viability of the California Rule because the issue of a public employee's opportunity to purchase service credit "was not a term and condition of public employment protected from impairment by the contract clause"].)

employee pension plans, specifically, whether the modifications impair vested pension rights of public employees:

(1) *Determining the effect of the modification:* A court first must consider whether the statutory modification of public employee pension rights "impose[s] an economic disadvantage on affected employees," relative to the preexisting pension plan and, if so, whether the disadvantages are offset by comparable new advantages. (*Alameda County, supra*, 9 Cal.5th at p. 1082.)

(2) *Determining whether the government's articulated purpose for the modification justifies any resulting impairment of pension rights:* Assuming the disadvantages are not offset, the court must determine whether the government's articulated purpose for making the change is "sufficient, for constitutional purposes, to justify any impairment of pension rights." (*Alameda County, supra*, 9 Cal.5th at p. 1082.) Public employee pension plans may be modified "'for the purpose of keeping [the] pension system flexible to permit adjustments in accord with changing conditions and at the same time maintain the integrity of the system.'" (*Alameda County, supra*, 9 Cal.5th at p. 1082, quoting *Allen I, supra,* 45 Cal.2d at p. 131.) Such changes can survive contract clause scrutiny so long as the changes "bear some material relation to the theory of a pension system and its successful operation.'" (*Ibid.*, quoting *Allen I, supra,* 45 Cal.2d at p. 131.)

(3) *Determining whether a comparable advantage would undermine or be inconsistent with the purpose of the modification:*

Assuming the change was made for a constitutionally permissible purpose, it "will be upheld under the contract clause only if providing comparable advantages would undermine, or would otherwise be inconsistent with, the modification's constitutionally permissible purpose." (*Alameda County, supra*, 9 Cal.5th at p. 1093.)

The Supreme Court held that PEPRA's modifications, which excluded from the definition of "compensation earnable" items of compensation that were previously included, did not violate the contract clause. (*Alameda County, supra,* 9 Cal.5th at p. 1099.) *Alameda County* also explained that for a modification to have a material relation to the theory of pension system, such a modification "'must relate to considerations internal to the pension system.'" (*Id.* at p. 1098.)

The Supreme Court found that changes to the definition of "compensation earnable" modified the law governing pensions under CERL, and those modifications disadvantaged legacy employees without providing any new advantages. (*Id.* at p. 1054.) Nevertheless, the Court determined that the purpose of the amendment—to prevent pension spiking and bring the definition of compensation earnable more closely to align with the pension system's underlying theory of what constitutes pensionable compensation—was constitutionally permissible. (*Ibid.*)

Further, the Supreme Court clarified that, under the specific facts of that case, the amendment to CERL did not require the provision of a comparable new advantage to offset modifications because doing so "would perpetuate the unwarranted advantages provided by these loopholes." (*Alameda County, supra,* 9 Cal.5th at p. 1054.) Under the circumstances, the provision of comparable new advantages to offset PEPRA's modifications to what constitutes compensation earnable would be "wholly inconsistent" with the Legislature's purpose. It would effectively restore advantages the Legislature had determined were improper, were unintended, and should not have been available for county employees to include in the calculation of their pensionable compensation in the first place. (*Id.* at p. 1102.)

II.     *Alameda County Does Not Disturb This Court's Conclusion That Hipsher's Vested Pension Benefits May Be Impaired by a Condition Subsequent*

Previously, we observed that "[a] public employee's vested retirement benefits can be defeated upon the occurrence of a 'condition subsequent.'" (*Hipsher I, supra,* 24 Cal.App.5th at p. 752, citing *Kern v. City of Long Beach* (1947) 29 Cal.2d 848, 853 (*Kern*).) We concluded that Hipsher's conviction for running an illegal gambling enterprise for over 12 years using public resources and in the course of his official duties constituted a condition subsequent permitting forfeiture of vested pension rights for the corresponding time period. (*Hipsher I,* at pp. 752, 754; see also *Allen v. Board of Administration* (1983) 34 Cal.3d 114, 124 (*Allen II*) ["'Laws which restrict a party to those gains reasonably to be expected from the contract are not subject to attack under the Contract Clause, notwithstanding that they technically alter an obligation of a contract'"].)

*Alameda County* did not address the effect of a condition subsequent on the definition or components of compensation earned. However, *Alameda County* did acknowledge the long-held rule that even where an employee's vested pension rights are at stake, the "'employee does not have a right to any fixed or definite benefits,'" and "'the amount, terms, and conditions of the benefits may be altered.'" (*Alameda County, supra*, 9 Cal.5th at p. 1100, quoting *Kern, supra,* 29 Cal.2d at p. 855; see also *Miller v. State of California* (1977) 18 Cal.3d 808, 816 (*Miller*), quoting *Kern, supra*, 29 Cal.2d at pp. 854–855 ["Although vested prior to the time when the obligation to pay matures, pension rights are not immutable. . . . [T]he government entity providing the pension may make reasonable modifications and changes in the pension system. This flexibility is necessary 'to permit adjustments in accord with changing conditions and at the same time maintain the integrity of the

13

system and carry out its beneficent policy.'"]  The decision in *Alameda County* did not disturb our conclusion that Hipsher's pension rights may properly be modified as a result of the condition subsequent of the commission of a job-related felony.

Our decision was premised on settled precedent that pension rights are subject to conditions designed to assure that public employees faithfully and honestly discharge their duties.  (*Hipsher I, supra*, 24 Cal.App.5th at pp. 751–752, citing *Kern, supra*, 29 Cal.2d at p. 853; see also *Betts v. Board of Administration* (1978) 21 Cal.3d 859, 863 ["the employee's eligibility for benefits can, of course, be defeated 'upon the occurrence of a condition subsequent'"]; *Dickey v. Retirement Board* (1976) 16 Cal.3d 745, 750, fn. 3 ["'The right to a pension is a vested right; the amount of the pension may not always be ascertained until the last contingency has occurred'"].)  As we explained, "'[i]t is assumed that upon acceptance of a position as an officer or employee of a government agency, an appointee will perform his duties conscientiously and faithfully.'"  (*Hipsher I*, at p. 754, quoting *MacIntyre v. Retirement Board of S.F.* (1941) 42 Cal.App.2d 734, 735 (*MacIntyre*).)  In California, as elsewhere, the fundamental requirement of "faithful service" lies at the core of a pension system.  (See *Kern,* at p. 852 ["'[Pension annuities] are in effect pay withheld to induce long-continued and faithful services'"], quoting *Giannettino v. McGoldrick* (1946) 295 N.Y. 208, 212.)  The concept of "faithful service" defines the parameters of the reasonable and substantial pension to which Hipsher is entitled.  (*Miller, supra,* 18 Cal.3d at p. 816; *Wallace v. City of Fresno* (1954) 42 Cal.2d 180, 183.)  Because section 7522.72's limited forfeiture of service credit merely "restrict[s] a party to those gains reasonably to be expected from the contract," the statute is "'not

14

subject to attack under the Contract Clause.'" (*Allen II, supra,* 34 Cal.3d at p. 124, citing *El Paso v. Simmons* (1965) 379 U.S. 497, 515.)

III. *Under the Alameda County Test, Modifications Effected by Section 7522.72 Need Not Provide Hipsher a Comparable Advantage and Do Not Unconstitutionally Impair His Vested Pension Rights*

Although the statutory amendment at issue in *Alameda County* differs from the felony forfeiture provision at issue here, application of its legal framework to Hipsher's contract clause claim supports our conclusion that section 7522.72 does not unconstitutionally impair Hipsher's pension rights. Section 7522.72's felony forfeiture provision serves the important purpose of ensuring the integrity of the public pension system from abusive practices and the related purpose of preserving public trust in government. Applying the test of *Alameda County* to these facts supports a conclusion that section 7522.72 need not provide Hipsher a comparable advantage to offset the diminution in his pension benefits. Indeed, the provision of such a benefit would be antithetical to section 7522.72's public purpose, allowing a public employee unfair enrichment for engaging in the very sort of abusive conduct the statute aims to curb. Accordingly, on these facts, we conclude PEPRA's pension forfeiture provision for legacy employees is consistent with the contract clause.

A. *The Legislative Purpose of Section 7522.72 to Protect the Integrity of Public Pension Systems Justifies the Resulting Impairment of Hipsher's Pension Rights*

The first step in the *Alameda County* test is satisfied here because the statutory modification effected by section 7522.72 causes an economic disadvantage to a legacy employee which is not offset by any new advantage.

15

The second step requires that we consider whether the Legislature's articulated purpose for the change is "sufficient, for constitutional purposes, to justify any impairment of pension rights." (*Alameda County, supra*, 9 Cal.5th at p. 1082.) The California Rule has long "'permit[ted] adjustments in accord with changing conditions'" to "'maintain the integrity of the system. [Citations.]'" (*Id*. at p. 1077.) However, to withstand constitutional scrutiny, modification of pension rights must "'bear some material relation to the theory of a pension system and its successful operation.'" (*Id*. at p. 1077, quoting *Allen I, supra*, 45 Cal.2d at p. 131.)

In *Alameda County*, the Supreme Court had "no difficulty" finding that the challenged statutory modification bore a material relation to operation of the CERL pension system. (*Alameda County, supra*, 9 Cal.5th at p. 1095.) The modification effected by section 34161 excluded certain types of special compensation from the scope of compensation earnable for the purpose of preventing pension spiking and to establish a more uniform standard for determining compensation earnable. (*Ibid*.) The Supreme Court found these objectives consistent with the pension system's design to provide compensation based on a public employee's years and performance of service, not compensation paid to employees based on strategic intention to inflate post-retirement benefits. (*Id*. at pp. 1095–1098.) Because section 34161's modification to the definition of "compensation earnable" was a "critical element in the calculation of pension benefits," it bore a material relation to an operating theory of the pension system and was necessary for the continued success of that system, even if it resulted in economic disadvantage for legacy employees. (*Id*. at p. 1098.)

Here, as before, we conclude that "section 7522.72 forfeitures are material to the successful operation of public pension funds." (*Hipsher I,*

16

*supra*, 24 Cal.App.5th at p. 756.) Public employee pension systems exist to induce and reward faithful public service. (See, e.g., *Kern, supra*, 29 Cal.2d at p. 852, quoting *Giannettino v. McGoldrick, supra,* 295 N.Y. at p. 212 ["'[Pension annuities] are in effect pay withheld to induce long-continued and faithful services'"]; *Carman v. Alvord* (1982) 31 Cal.3d 318, 325, fn. 4 [explaining that pensions are an important government obligation to "help induce faithful public service"]; *Douglas v. Pension Board of City of Sacramento* (1925) 75 Cal.App. 335, 340 ["The hope held out for future additional reward or compensation for [public officers'] public services . . . is conducive to uniform faithfulness and efficiency in discharging the duties which their offices or employments have exacted"]; *MacIntyre, supra,* 42 Cal.App.2d at p. 735 ["It is assumed that upon acceptance of a position as an officer or employee of a governmental agency, an appointee will perform his duties conscientiously and faithfully"]; see also Analysis of Assembly Committee on Public Employees, Retirement and Social Security of Assem. Bill No. 340 [passed as part of PEPRA adding the pension forfeiture provision, section 7522.72], May 4, 2011, Comments, p. 3 ["California's public pension systems were established to provide retirement security for those who give their lives to public service"].)

The corollary to that principle—vested pension rights of employees who fail to provide faithful service and abuse their public positions by engaging in criminal conduct in the course of their duties may be subject to modification—is also well-established. "'Sanctions are commonly imposed to assure the faithful and honest discharge of the duties of the [public] employee.'" (*Hipsher I, supra*, 24 Cal.App.5th at p. 753, quoting *Steigerwalt v. City of St. Petersburg* (1975) 316 So.2d 554, 556]; see also *id.* at pp. 752– 753, fn. 6 [citing decisions in other states with pension forfeiture laws similar

17

to section 7522.72].)  This principle also is embodied pre-PEPRA forfeiture laws, including section 7522.70, which generally requires elected officials convicted of certain crimes to forfeit pension benefits.  (Stats. 2005, ch. 322 [adding former § 1243, permitting limited forfeiture of pension benefits for "any elected public officer who takes public office, or is reelected to public office, on or after January 1, 2006" upon conviction of a specified crime]; see Little Hoover Com., Public Pensions for Retirement Security (Feb. 2011), (Little Hoover Report), at p. 39.)[10]

Further, section 7522.72 is temperate and narrowly tailored, and bears a material relationship to the theory of the pension system to reward faithful public service.  (*Alameda County, supra*, 9 Cal.5th at p. 1082.)  The requirement of partial forfeiture is triggered only by felonious conduct committed in the scope of a pensioner's public employment (§ 7522.72, subd. (b)(1)) and limited to service time from the date the criminal conduct began.  (§ 7522.72, subds. (b)(1), (c)(1).)  The retirement system also must restore to the affected employee all contributions he or she made during the period of the commission of felonious conduct.  (*Id*., subd. (d)(1).)

To permit an employee who committed such an abuse to draw a full pension during retirement would do nothing to disincentivize the very abuse the pension system is intended to curb and would erode public trust.  (See Little Hoover Report, p. 39 [describing pension forfeiture for criminal misconduct as an issue of "fairness" to taxpayers and pension recipients].)  PEPRA's legislative history acknowledges that, "abusive practices engaged in

---

[10]     We grant the State's Request for Judicial Notice of this "official act" of an executive department of the state government.  (See *Rodas v. Spiegel* (2001) 87 Cal.App.4th 513, 518 ["Official acts include records, reports and orders of administrative agencies"].)  (Evid. Code, §§ 452, subd. (c), 453, subds. (a), (b).)

by a few individual[s] . . . put retirement benefits at risk for the vast majority of honest, hard-working public servants." (May 4, 2011, Bill Analysis of Assem. Bill No. 340, Comments, p. 4.) *Alameda County* supports our continuing conclusion that "section 7522.72 forfeitures are material to the successful operation of public pension funds," and "serve[] the important public purpose of ensuring the integrity of public pension systems." (*Hipsher I, supra*, 24 Cal.App.5th at pp. 752, 756.) We see no principled distinction between the result in *Alameda County*, which disallowed public employees from taking advantage of statutory loopholes artificially to spike compensation used as a basis to calculate future retirement benefits, and the limited forfeiture of section 7522.72, which disallows a public employee who has committed a job-related felony from collecting a pension meant to reward his public service.

We reject Hipsher's claim that the requirements of *Alameda County* are not satisfied because section 7522.72 is concerned only with considerations external to the operation of the pension system. (See *Alameda County, supra*, 9 Cal.5th at p. 1098.) Our Supreme Court has long recognized that public benefits are not immutable. "Although vested prior to the time when the obligation to pay matures, pension rights are not immutable. For example, the government entity providing the pension may make reasonable modifications and changes in the pension system. This flexibility is necessary 'to permit adjustments in accord with changing conditions and at the same time maintain the integrity of the system and carry out its beneficent policy.'" (*Miller, supra*, 18 Cal.3d at p. 816, quoting *Kern, supra*, 29 Cal.2d at pp. 854–855.) Employees have no right to a fixed or definite pension benefit, only to a substantial, reasonable pension. (*Alameda County, supra*, 9 Cal.5th at p. 1078.) In *Alameda County* the definition of what sorts

19

of pay could form the basis for "compensation earnable" was critical to the calculation of pension benefits and the successful operation of the public pension system. Accordingly, the constitutionally permissible purpose of the statutory change in *Alameda County* was intended to end the exploitation of loopholes created by ambiguities in statutory language that defined various types of "compensation" and allowed employees to spike pension benefits. (*Id*. at p. 1102 ["PEPRA's amendment compels uniformity on the issues it addresses, guaranteeing that compensation earnable will be implemented consistently with the Legislature's intent in each CERL county"]) As explained above, we discern no principled distinction between the misconduct in *Alameda County,* and the use by Hipsher of government resources intended for the performance of public service, but instead devoted to the commission of unlawful job-related crime at the same time he continued to accrue pension benefits. In both cases, the public employee has gained a benefit to which he was not lawfully entitled, and which would not have accrued to a faithful public servant. The partial forfeiture required by section 7522.72 bears a material relation to the successful operation of public pension funds, and serves the purposes of PEPRA, which was enacted to curb the abuse of public pension systems. (See *ibid.*)

B. *The Purpose of Section 7522.72 Would Be Undermined if a Public Employee Required to Forfeit a Portion of His Pension Benefits as a Result of a Conviction for a Job-Related Felony is Entitled to a Comparable Advantage*

Hipsher argues that even if section 7522.72 bears a material relationship to the theory underlying a pension system, he should nevertheless be provided a comparable new advantage, such as an opportunity to show that, notwithstanding his job-related felony conviction,

20

he satisfactorily performed his job duties without public detriment, and should be permitted to collect his full pension benefits. We reject Hipsher's assertion that section 7522.72 may only be sustained under the contract clause if it provides a corresponding new advantage to offset the partial forfeiture of pension benefits. As we explained previously, "it would be anomalous to suggest that the Legislature must reward an employee for conviction of a job-related felony by providing a new comparable advantage in the context of a section 7522.72 forfeiture." (*Hipsher I, supra*, 24 Cal.App.5th at p. 754.) *Alameda County* is in accord. There, the Supreme Court confirmed that the contract clause does not require provision of a comparable new advantage to offset modifications to the pension system where, as here, the provision of such a benefit would undermine, or otherwise be inconsistent with, the statute's public purpose. (*Alameda County, supra*, 9 Cal.5th at p. 1101.)

As applied to the facts of this case, section 7522.72 illustrates the underlying rationale for this conclusion. The statute's constitutionally permissible twin purposes are to protect the public employee pension system from abusive practices by incentivizing careers of faithful public service, and to preserve public trust in government by discouraging serious criminal activity abusive of the public trust. To condition partial pension forfeiture by an employee convicted of a job-related felony on the government's provision of a comparable offsetting benefit would undermine the Legislature's intent and yield perverse results. Public employees would lack a disincentive to misuse their official positions for unlawful personal gain if they knew such abuse would not jeopardize their entitlement to full retirement benefits. In such a case, where good government and public trust in government would suffer as a result of a legacy employee's criminal conduct, no comparative advantage

21

need be provided to offset the disadvantages caused by modification to the pension benefit system. Furthermore, section 7522.72 is not intended to be punitive. Rather, the statute simply recognizes that a commensurate reduction in benefits is appropriate for an employee who has devoted government time and resources to certain criminal activity rather than the purpose for which he or she was employed.

Thus, regardless whether Hipsher remained available to fight fires, he devoted publicly funded time (which should have been devoted to his LAFD duties) and used government resources (LAFD equipment and/or workspace) to further felonious activity, in violation of public policy. Partial forfeiture under section 7522.72 reasonably eliminates only the portion of his vested benefits bearing a reasonable relationship to this conduct, and thus the statute bears a material relation to the theory and successful operation of public pension funds. (§ 7522.72, subds. (b)(1), (c)(1); cf., *Wallace v. City of Fresno, supra,* 42 Cal.2d 180.)

In other words, the public pension system rewards employees for their years of faithful, conscientious performance of public duties. When a legacy employee fails to devote his full time and effort to his job duties, and uses public resources in the commission of a job-related felony, provision of full retirement benefits to that employee notwithstanding the criminal conduct (or the provision of an alternative comparative advantage) threatens the integrity and core purpose of the public pension system. Section 7522.72 is carefully targeted at the disgorgement only of benefits earned in the course of a legacy public employee's job-related felonious conduct.

To paraphrase *Alameda County*, it would be anomalous, at best, to hold that the Constitution requires current employees be provided an equivalent advantage to mitigate the effect of their job-related felonious conduct.

22

(*Alameda County, supra*, 9 Cal.5th at p. 1102.)  Requiring the provision of "comparable advantages would be wholly inconsistent with the Legislature's purpose by restoring in some form advantages that, in the view of the Legislature, should not have been available to county employees in the first place." (*Ibid.*; see also *Hipsher I, supra*, 24 Cal.App.5th at p. 754 ["it would be anomalous to suggest that the Legislature must reward an employee for conviction of a job-related felony by providing a new comparable advantage in the context of a section 7522.72 forfeiture"].)  Because a requirement to provide comparable advantages under these circumstances would significantly undermine the Legislature's constitutionally permissible purpose underlying section 7522.72, the contract clause imposes no such requirement.[11]

//

//

//

//

//

//

//

//

---

[11] The inquiry here, as in similar cases, is fact specific.  As Justice Cuéllar explained in *Alameda County,* "[T]he test the court applie[d there was] merely a specific application . . . of a more general inquiry:  whether a reduction in pension rights without any comparable new advantages is 'reasonable' and 'necessary' to further 'an important state interest.' (*Sonoma County Organization of Public Employees v. County of Sonoma* (1979) 23 Cal.3d 296, 308.)  Modifications to pension rights present many complexities, and courts must determine their validity ""upon the facts of each case."' (Maj. opn., *ante*, 9 Cal.5th at p. 1100, quoting *Allen I* [, *supra*,] 45 Cal.2d [at p.] 131.)" (*Alameda County, supra,* 9 Cal.5th at pp. 1103–1104 (conc. opn. of Cuéllar, J.)

23

III.    *Section 7522.72 Does Not Violate the Ex Post Facto Clause of the California Constitution*[12]

Hipsher asserts the forfeiture provision in section 7522.72 violates the ex post facto clause of the California Constitution.  We disagree.

The state is barred from enacting ex post facto laws under both the federal and California Constitutions.  (U.S. Const., art. I, § 10; Cal. Const., art. I, § 9.)  The ex post facto clause prohibits laws which "retroactively alter the definition of crimes or increase the punishment for criminal acts." (*Collins v. Youngblood* (1990) 497 U.S. 37, 43.)[13]  The clause "ensures that individuals have 'fair warning' about the effect of criminal statutes," and "'restricts governmental power by restraining arbitrary and potentially vindictive legislation.' [Citation.]" (*Landgraf v. USI Film Products* (1994) 511 U.S. 244, 266–267.)

The prohibition against ex post facto legislation applies almost exclusively to criminal statutes but, in limited circumstances, it can apply to civil legislation.  (*Roman Catholic Bishop of Oakland v. Superior Court* (2005) 128 Cal.App.4th 1155, 1162.)  "Despite the Legislature's clear intent to establish civil, not criminal proceedings, we will find an ex post facto

---

[12]    In *Hipsher I*, we affirmed the trial court's conclusion that section 7522.72 is not an unconstitutional ex post facto law.  (*Id*. at p. 756.)  We also determined that Hipsher had been prejudicially denied due process, and that LACERA bears the burden to afford Hipsher the requisite due process protections in determining whether his conviction falls within the scope of section 7522.72. (*Id*. at pp. 761–766.)  Hipsher's petition for review before the Supreme Court did not challenge our ex post facto or our due process determinations.  Nevertheless, because the Supreme Court vacated *Hipsher I* in its entirety, we reiterate those determinations.

[13]    The federal and state ex post facto clauses are interpreted identically. (*People v. Helms* (1997) 15 Cal.4th 608, 614.)

violation if the statutory scheme is so punitive in purpose or effect that it negates the Legislature's intentions.  This requires the 'clearest proof,' however."  (*Id*. at p. 1170.)  Thus, the fact that a statute is labeled as civil is not dispositive.  (*Id*. at p. 1162.)

"Whether a statutory scheme is civil or criminal under the ex post facto doctrine is first of all a question of statutory construction.  We consider the statute's text and structure to determine the legislative objective.  If we conclude that the statute as applied retroactively was intended to punish, then our inquiry is over and we will find an ex post facto violation. [Citation.]"  (*Roman Catholic Bishop of Oakland v. Superior Court, supra*, 128 Cal.App.4th at p. 1169.)

Section 7522.72 is a civil statute, and Hipsher concedes the Legislature did not intend it to be criminal in nature.  He contends, however, that the purpose and effect of section 7522.72 are so punitive that it must be considered punishment.  He is mistaken.

The purpose of PEPRA was, in part, to regulate what were seen as pervasive abuses in public pension systems, that is, "to reset overly generous and unsustainable pension formulas for both current and future workers." (Little Hoover Com., Public Pensions for Retirement Security (Feb. 2011), p. 53.)  "Only the 'clearest proof' will suffice to override the Legislature's stated intent and render a nominally civil statute penal for ex post facto purposes. [Citation.]"  (*21st Century Ins. Co. v. Superior Court* (2005) 127 Cal.App.4th 1351, 362.)  In making this determination, courts consider the following seven factors:  (1) whether the sanction involves an affirmative disability or restraint, (2) whether it has historically been regarded as a punishment, (3) whether it comes into play only on a finding of scienter, (4) whether its operation will promote the traditional aims of punishment—retribution and

deterrence, (5) whether the behavior to which it applies is already a crime, (6) whether there is a rational alternative purpose, and (7) whether it appears excessive in relation to the alternative purpose assigned. (*Kennedy v. Mendoza-Martinez* (1963) 372 U.S. 144, 168–169 (*Mendoza-Martinez*).) These factors represent "'useful guideposts,'" but are "'neither exhaustive nor dispositive.'" (*Smith v. Doe* (2003) 538 U.S. 84, 97.)

The forfeiture in section 7522.72 satisfies the fifth factor because it applies to behavior which is already a crime. The fourth factor is arguably satisfied because the forfeiture will promote the traditional aims of punishment—retribution and deterrence. The remaining factors are not satisfied.

Regarding the first factor, the loss of retirement benefits does not constitute an "affirmative disability or restraint. The paradigmatic restraint is imprisonment. [Citation.]" (*21st Century Insurance Co. v. Superior Court, supra*, 127 Cal.App.4th at p. 1364.) Unlike imprisonment or similar restraints on liberty, civil penalties such as a forfeiture of retirement benefits do not constitute an affirmative disability or restraint. (See *ibid.*)

Turning to the second factor, a reduction in retirement benefits is not historically regarded as punishment in a penal sense. (See, e.g., *United States v. Ursery* (1996) 518 U.S. 267, 270–271 [civil forfeitures do not constitute punishment]; *MacLean v. State Bd. of Retirement* (2000) 432 Mass. 339, 351–352 [revocation of pension benefits following a job-related conviction is not criminal punishment]; *Doherty v. Retirement Bd. of Medford* (1997) 425 Mass. 130, 136–137 [forfeiture of retirement benefits following a job-related conviction does not render statute "so punitive as to overcome its restitutionary purpose"].) Moreover, Hipsher's first claim of error is that section 7522.72 violates the *contracts* clause.

26

With respect to the third factor, scienter is not required because section 7522.72 applies to a conviction for "any felony" arising out of the performance of his or her official duties. (§ 7522.72, subd. (b)(1).)

As to the sixth factor, one of the purposes underlying PEPRA, as we have noted, was to curb pension abuse and ensure adequate funding of the system as a whole. Preserving the pension system by curbing abuses is a rational, nonpunitive purpose.

Turning to the seventh factor, the pension reduction effected by section 7522.72 is not excessive in relation to the alternative purpose assigned. The forfeiture is limited to the period during which the pensioner committed the job-related felony. (§ 7522.72, subd. (c)(1).) Moreover, any contributions to the fund made by the pensioner are returned "upon the occurrence of a distribution event."[14] (§ 7522.72, subd. (d)(1).) The forfeiture in section 7522.72 is proportional to the wrongdoing.

We conclude the *Mendoza-Martinez* factors do not override the legislative intent underlying PEPRA. Hipsher fails to demonstrate his case falls within the "limited circumstances" in which the ex post facto clause applies to civil legislation.

V. *Hipsher Has Suffered a Prejudicial Denial of Due Process*

The County contends the trial court erred by issuing the writ of mandate because (1) Hipsher was not owed any additional due process prior to the reduction to his retirement benefits, (2) any additional due process, if owed, must be provided by LACERA, and (3) the County was not named as a

---

[14] "[D]istribution event" includes separation from employment, death, or retirement. (§ 7522.72, subd. (d)(3).)

27

respondent in the writ.[15]  LACERA asserts the writ was erroneously issued because (1) it had a ministerial duty to adjust Hipsher's retirement benefits once the County provided notice of Hipsher's job-related felony conviction, (2) the Legislature did not intend due process other than the process in the underlying criminal proceeding itself, and (3) the County should provide any additional process owed to Hipsher.

A. *Standard of Review*

When reviewing a trial court's ruling on a writ of mandate, "'the appellate court is ordinarily confined to an inquiry as to whether the findings and judgment of the trial court are supported by substantial, credible and competent evidence.  This limitation, however, does not apply to resolution of questions of law where the facts are undisputed.  In such cases, as in other instances involving matters of law, the appellate court is not bound by the trial court's decision, but may make its own determination.  [Citation.]'" (*Pacific Gas & Electric Co. v. Department of Water Resources* (2003) 112 Cal.App.4th 477, 491.)

B. *The Reduction to Hipsher's Vested Pension Implicated His Due Process Rights*

A person may not be deprived of life, liberty or property without due process of law.  (U.S. Const., 14th Amend.; Cal. Const., art. I, § 7, subd. (a).) The due process clause protects an individual's liberty interest in freedom

---

[15]     The caption page of the peremptory writ names LACERA as the respondent and the County as a real party in interest; however, the text of the writ itself names both LACERA and the County as respondents.  This contention is moot in light of our disposition regarding the County's second argument.

from arbitrary adjudicative procedures. (*People v. Ramirez* (1979) 25 Cal.3d 260, 264, 268.) The requirements of due process extend to administrative adjudications. (*Today's Fresh Start, Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197, 214.)

The threshold question is whether Hipsher's retirement benefits are a property interest encompassed within Fourteenth Amendment protection. We conclude that they are.

The refusal to pay a public retiree's vested benefits is an act under color of state law. (See *Thorning v. Hollister School Dist.* (1992) 11 Cal.App.4th 1598, 1610.) The deprivation of a public employee's vested pension invokes a property right, "'the taking of which would be a denial of Due Process.'" (*Ibid.*; accord, *Pearson v. County of Los Angeles* (1957) 49 Cal.2d 523, 532.) As articulated by the Supreme Court of the United States, "[t]he Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits." (*Board of Regents of State Colleges v. Roth* (1972) 408 U.S. 564, 576, fn. 7.)

These decisions make clear that some form of due process is required before the state may reduce a pensioner's vested retirement benefits. To allow otherwise would invite the kind of arbitrary and capricious conduct the due process clause seeks to avoid. (See *Nebbia v. People of New York* (1934) 291 U.S. 502, 525.)

C. *What Process is Required?*

A public employee who commits a job-related felony "shall forfeit" all benefits, other than their own contributions, earned from the earliest date of the commission of a qualifying felony. (§ 7522.72, subds. (b)(1), (c)(1).) However, section 7522.72 does not provide a mechanism for the pensioner to

29

challenge an adverse decision. When protected interests are implicated, as they are in this case, we must decide what procedures are required to satisfy due process. (*Murden v. County of Sacramento* (1984) 160 Cal.App.3d 302, 307.) The answer is evident when the conviction, on its face, necessarily stems from a public employee's performance of official duties. (E.g., Pen. Code, §§ 424 [embezzlement of public funds]; 68 [receipt of bribe by public officer]; 425 [negligent handling of public moneys]; 86 [receipt of bribe by legislator]; 93 [receipt of bribe by judicial officer]; 118.1 [false statement in criminal report by peace officer]; and 289.6, subd. (i) [sexual activity with confined adult by public employee with prior conviction].)[16]

The criminal proceeding leading to conviction of a crime that per se involves the public employee's official duties and which therefore, as a matter of law, subjects the employee to benefit forfeiture under section 7522.72, necessarily satisfies any due process concerns. "In such cases there is no real necessity to examine the facts, resolve any conflicts in the evidence, and exercise any judgment with respect thereto, [because] the only question is a legal one, i.e., whether the [person] was convicted of a crime of the character specified in the statute. [Citations.] In these cases due process is satisfied because the [person] had his day in court when he was put to trial for and convicted of the commission of such crime. [Citation.]" (*Slaughter v. Edwards* (1970) 11 Cal.App.3d 285, 294.)

### 1. *Hipsher Was Deprived of Due Process*

The issue is more complex when the crime does not necessarily arise from the scope of the pensioner's public duties. (See, e.g., *Slaughter v.*

---

[16]     This is by no means an exhaustive list of qualifying crimes.

*Edwards, supra*, 11 Cal.App.3d at p. 294 [in cases where the conviction itself is not dispositive, an independent examination is required].) That is the case before us. Hipsher's crime for operating an illegal gambling business (18 U.S.C. § 1955) did not, on its face, involve the performance of his official duties. Nor does the statement of facts set forth in Hipsher's plea agreement reference where he conducted the gambling operation. He admitted the gambling violation but did not admit that it occurred in the performance of his public employment.

In determining that Hipsher's conviction was job-related, and therefore qualified as a basis for forfeiture under section 7522.72, the County Human Resources manager relied on Homeland Security reports prepared as part of the investigation of Hipsher's federal criminal case.[17] It appears Hipsher was not notified of this review. The County then sent a referral letter to LACERA indicating Hipsher's conviction was related to his job. Hipsher was not sent a copy of that letter.

LACERA automatically reduced Hipsher's retirement benefits upon receiving the referral letter. The letter notes that "[s]ince the law requires the felony to be job related, the County Department of Human Resources (DHR) is responsible for making a determination that the felony is job-related."

We conclude that the County's exclusive reliance on the Homeland Security investigation reports did not provide Hipsher notice and an opportunity to be heard as to whether his conviction qualifies as a job-related felony offense under section 7522.72.

---

[17] Homeland Security reports, like police reports, are not part of the record of conviction. (Cf. *Draeger v. Reed* (1999) 69 Cal.App.4th 1511, 1523.)

31

"In administrative proceedings, the requisites of due process will vary according to the competing interests at issue, so long as basic requirements of notice and hearing are satisfied.  [Citations.]"  (*Rupf v. Yan* (2000) 85 Cal.App.4th 411, 428–429.)  At a minimum, Hipsher was entitled to written notice reasonably calculated to apprise him of the pendency of the section 7522.72 action, and the right to present his objections before an impartial decision maker.  (*Bergeron v. Department of Health Services* (1999) 71 Cal.App.4th 17, 24 [due process requires opportunity to present objections]; *Haas v. County of San Bernardino* (2002) 27 Cal.4th 1017, 1025 [due process requires the adjudicator to be impartial].)  "'A formal hearing, with full rights of confrontation and cross-examination is not necessarily required.'  [Citation.]"  (*Bergeron*, at pp. 23–24.)  Indeed, the County now affords this model of process to pensioners who may be subject to forfeiture pursuant to section 7522.72.[18]

### 2.  *Hipsher was Prejudiced by the Denial of Due Process*

The County contends that even assuming Hipsher was entitled to some form of additional due process, he was not prejudiced by any deficiency in process.  Generally, a party is not deprived of due process in an administrative proceeding unless the deficiency in process resulted in prejudice.  (See *Hinrichs v. County of Orange* (2004) 125 Cal.App.4th 921, 928 [procedural due process violations assessed for harmlessness].)

---

[18]    According to the County, it recently "implemented an interim process consistent with the trial court's ruling, whereby the County provides notice to an employee and the right to respond in writing, if the County has a reasonable basis to believe that a conviction is job related and may result in pension forfeiture.  Such process is afforded to an employee prior to any notification to LACERA."  Notwithstanding this interim procedure, the County does not concede that any due process is required.

In this case, insofar as the record shows, prejudice is evident because (1) Hipsher's conviction does not, on its face, satisfy the forfeiture provisions of section 7522.72, (2) the verified petition for writ of mandate rejected the notion that his conviction arose out of the performance of his official duties, (3) information contained in the Homeland Security reports is not part of the record of conviction, and (4) Hipsher was not given notice or an opportunity to contest the allegation that his felony conviction was job-related.

We conclude Hipsher was prejudicially denied his constitutionally protected due process rights. At a minimum, Hipsher was entitled to notice of the proposed forfeiture under section 7522.72, along with an opportunity to contest his eligibility for forfeiture before an impartial decision maker. The remaining issue is which public entity is required to adjudicate these rights.

D. *Section 7522.72 is Ambiguous as to Which Agency is Tasked with Determining Whether the Offense is Job-Related*

The final question is whether the County or LACERA is obligated to afford the required due process. The trial court found the County was obliged to do so because it is "the governmental entity that made the decision that ultimately deprived Petitioner of his property." We disagree.

The judiciary's role in construing a statute is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. (*Merced Irrigation Dist. v. Superior Court* (2017) 7 Cal.App.5th 916, 924 (*Merced*).) To this end, courts start with the words of the statute, giving them their usual and ordinary meaning. (*Ibid*.)

Section 7522.72 requires the prosecuting agency, within 60 days after a qualifying conviction, to notify the public employer who employed the employee at the time of the commission of the felony of (1) the date of

conviction, and (2) the date of the first known commission of the felony. (§ 7522.72, subd. (e)(1).)  In turn, the public employer is required to notify the public retirement system of the employee's qualifying conviction within 90 days of the conviction.  (§ 7522.72, subd. (f).)  Section 7522.72 does not address which entity determines whether the pensioner's conviction was connected to his or her official duties.

"When statutory language is susceptible to more than one reasonable interpretation, courts must (1) select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute and (2) avoid an interpretation that would lead to absurd consequences.  [Citation.]" (*Merced, supra*, 7 Cal.App.5th at p. 925.)  One difficulty in ascertaining the intent of the Legislature is that, in many cases, the Legislature ""had no real intention, one way or another, on the point in question; that if they had, they would have made their meaning clear . . . ."" [Citation.]" (*Ibid*.)

This difficulty is present here because nothing in the text or legislative history of section 7522.72 contemplated that the pensioner's conviction would not, on its face, arise out of the performance of his or her official duties. Given that section 7522.72 is ambiguous, "[w]e must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences. [Citation.]" (*People v. Jenkins* (1995) 10 Cal.4th 234, 246.)

E. *LACERA Shall Afford the Requisite Due Process*

LACERA contends "it is reasonable to conclude that the Legislature intended that the employer make the ultimate determination whether the

elements under Section 7522.72 [have] been satisfied and to report this information to the retirement system." In essence, LACERA asserts it had a ministerial duty to initiate forfeiture proceedings once the County reported Hipsher's job-related conviction, pursuant to its duty set forth in section 7522.72, subdivision (f).

The California Constitution provides that the retirement board of each public pension holds the "sole and exclusive fiduciary responsibility" to administer the system. (Cal. Const. art. XVI, § 17, subd. (a).) To this effect, "LACERA's board of retirement [citation] is charged with the responsibility of ascertaining the eligibility for and paying pension benefits to eligible employees." (*Weber v. Board of Retirement* (1998) 62 Cal.App.4th 1440, 1442.)

Indeed, once a person has separated from his or her public employment, the County's Civil Service Commission "has no further jurisdiction except in the limited situations specified in the governing constitutional charter or statutory provisions." (*Zuniga v. Los Angeles County Civil Service Com.* (2006) 137 Cal.App.4th 1255, 1260.) Section 7522.72 does not expressly include any such provision; thus, in imposing a reporting duty on the County, the statute does not disregard the established rule that the retirement board of a public pension—here, LACERA—has the obligation to determine eligibility or ineligibility for pensions.

Subdivision (f) requires the public employer to notify the retirement system of the employee's qualifying conviction "within 90 days of the conviction." (§ 7522.72, subd. (f).) Were the County responsible for providing the necessary due process then, within 90 days of the conviction, it would have to (1) discover the conviction, (2) comb through the criminal records (which often span thousands of pages) to determine whether it qualifies as a

35

job-related felony, (3) provide notice to the pensioner, (4) determine the earliest date of commission, (5) give the employee an opportunity to contest the County's preliminary finding, (6) render a decision, and (7) perhaps provide additional layers of administrative review.[19]  Requiring this entire process to be completed within 90 days would produce an unworkable procedure.  We are bound to interpret statutes so as to avoid "unworkable" results.  (*Los Angeles Unified School Dist. v. Garcia* (2013) 58 Cal.4th 175, 194.)

Section 7522.72 also provides that "[t]he operation of *this section* is not dependent upon the performance of the [employer's] notification obligations specified in this subdivision."  (§ 7522.72, subd. (f), italics added.)  It appears "this section" means all of section 7522.72 and is not limited to the public employer's reporting obligations.  (See *People v. Neely* (2004) 124 Cal.App.4th 1258, 1262 [reference to "this section" of a statute means the entire statute].)  Contrary to LACERA's interpretation, the forfeiture obligation in section 7522.72 is independent of the employer's reporting obligations.

Our conclusion is further supported by *Danser v. Public Employees' Retirement System* (2015) 240 Cal.App.4th 885 (*Danser*).  There, a judge was convicted of conspiring to obstruct justice while serving as a superior court judge.  (*Id.* at p. 887.)  The judge retired from office after the conviction but before sentencing.  (*Id.* at p. 888.)  The court later reduced the felony to a misdemeanor, terminated probation and dismissed the charges.  (*Id.* at p. 887.)  California's Public Employees' Retirement System subsequently

---

[19]     "For example, if the administrative proceeding includes a right to appeal an allegedly improper action, a plaintiff must generally pursue that administrative appeal in order to exhaust his or her administrative remedies." (*Clews Land & Livestock, LLC v. City of San Diego* (2017) 19 Cal.App.5th 161, 184.)

determined that the judge had been convicted of a felony offense in the course and scope of his judicial duties, and therefore was subject to benefit forfeiture under section 75526.[20] (*Id.* at p. 888.)

The judge unsuccessfully challenged the forfeiture determination by a petition for writ of mandate. (*Danser, supra*, 240 Cal.App.4th at p. 888.) Pertinent here, the judge argued on appeal that the retirement system lacked jurisdiction to interpret criminal laws in order to determine whether forfeiture was appropriate. (*Id.* at p. 891.) The Court of Appeal held "CALPERS acted within its authority in interpreting the [applicable] retirement law" because it is charged with administering the retirement system, and "is responsible for determining the right of a public pension system member to receive benefits. [Citation.]" (*Ibid.*) *Danser* supports our conclusion that the retirement board is the adjudicatory entity with authority to determine whether forfeiture of Hipsher's retirement benefits was warranted.

Finally, LACERA contends that "requiring the retirement system to provide due process is not workable" because "review by the retirement system would place the retirement system in the unseemly position of determining the propriety of decisions expressly given by the Legislature to the prosecutor and the employer." This argument misstates the prosecutors' and employers' obligation under section 7522.72, which is merely to report the conviction. (§ 7522.72, subds. (e)(1) & (f).)

---

[20] Section 75526 provides that a judge who is convicted of a crime committed while holding judicial office, that is punishable as a felony, and which either involves moral turpitude under that law or was committed in the course and scope of performing the judge's duties, forfeits any retirement benefits beyond the amount of his or her contributions to the system.

Further, LACERA has not shown that providing due process is "not workable." In fact, LACERA has an existing mechanism for administrative appeals "when an individual disagrees with LACERA's decision on matters related to his or her . . . retirement benefits." (LACERA Website, Administrative Appeal Procedure, <https://www.lacera.com/benefits/administrative_appeal_procedure.html> [as of Dec. 15, 2020].) This procedure includes three levels of review, culminating in an appeal to the Board of Retirement, placement on the Board's agenda, and a written decision from LACERA's Legal Office. (*Ibid*.) In any event, the fact that providing constitutional due process is burdensome does not excuse the failure to provide it.

Based on the foregoing, we conclude LACERA is obligated to afford Hipsher due process protections in accordance with its existing administrative appeal procedures, and consistent with this opinion.

//

//

//

//

//

//

//

//

//

//

//

**DISPOSITION**

The judgment is modified to reflect that LACERA, not the County, shall afford the requisite due process. This process shall conform with LACERA's existing administrative procedures and, at a minimum, provide Hipsher (1) notice of LACERA's intent to initiate forfeiture proceedings, and the reasons therefor, and (2) an opportunity to present his objections before LACERA's impartial decision maker, regarding whether he falls within the scope of section 7522.72. The judgment is affirmed as modified. Each party shall bear its own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(3).)

**CERTIFIED FOR PUBLICATION**


WILLHITE, Acting P. J.

We concur:


COLLINS, J.


CURREY J.

39